## In re RECORD CLUB OF AMERICA, INC., Debtor.

### Civ. A. Nos. 82–1050 and 82–1052 to 82–1055.

United States District Court, M.D. Pennsylvania.

Jan. 25, 1983.

Nancy G. Grossman, New York City, for Record Club of America, Inc.

John W. Thompson, Jr., York, Pa., for appellants.

## MEMORANDUM

RAMBO, District Judge.

United Artists Music & Record Groups, Inc. [hereinafter United Artists], Warner Electric Atlantic [hereinafter Warner], Keel Manufacturing, Inc. [hereinafter Keel], Atlantic Recording Corporation [hereinafter Atlantic] and Pickwick International, Inc. [hereinafter Pickwick] have appealed an order of the bankruptcy court which confirmed Record Club of America, Inc.'s [hereinafter RCOA] plan of arrangement. All the parties have brief the issues and no oral argument was necessary.

RCOA alleges that these appellants do not have standing to appeal, because they do not meet the definition of "a person aggrieved" as required by 11 U.S.C. § 67(c). 11 U.S.C. § 67(c) says:

> c. A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest.

A person aggrieved is broadly defined. The court in *In re Capitano,* 315 F.Supp. 105 (E.D.La.1970) said:

> [Section 67(c)'s] plain words allow objections to be filed by aggrieved persons, without further restricting the right to those aggrieved persons who have filed proof of claim or who have unsuccessfully objected to a bankrupt's discharge.
>
> ■ The test of whether a petitioner is a person aggrieved is whether his "property may be diminished, his burdens increased or his rights detrimentally affected by the order sought to be reviewed," *In re Terrace Superette, Inc.,* W.D.Wis., 1964, 229 F.Supp. 371. "A legal interest in the orders sought to be reviewed" is the formulation used in the Second Circuit. *In re Camp Packing Co.,* N.D.N.Y., 1956, 146 F.Supp. 935. 315 F.Supp. at 106–07.

RCOA attacks the applicability of either the word "person" or the word "aggrieved" to each appellant.

■ In the case of United Artists, the debtor argues that United Artists no longer exists because it was merged into Capitol Records, Inc. on April 1, 1981. The legal argument is that if United Artists no longer exists, then it is not a person within section 67(c).

Bankruptcy Rule 725 for the most part incorporates Rule 25 of the Federal Rules of Civil Procedure. Rule 25(c) says:

> (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

United Artists may continue this action in its own name or move for the substitution of Capitol as the party in interest. The federal rules espouse a liberal policy toward litigation. The technical nuances of corporate merger should not defeat a valid claim. *See Solomon v. Buckley,* 86 F.R.D. 464, 468 (E.D.La.1980). The exhibits filed as a portion of the debtor's motion to dismiss show that Capitol Records, Inc. is the successor to the rights and obligations of United Artists. *See* Agreement of Merger of Liberty Records, Inc. [a successor to United Artists], EMI America Records, Inc. and Capitol Records, Inc., filed April 1, 1981 with the office of the Secretary of State of the State of California and incorporated as a part of Exhibit B to the Affidavit of Sigmund Friedman filed with this court on September 1, 1982. Thus United Artists is a person for purposes of 11 U.S.C. § 67(c).

■ RCOA argues that Keel is not a person, because the corporation was dissolved in 1975. Rule 25 cannot create substantive rights, so it is necessary to look to state law to determine whether a corporation may pursue litigation after dissolution. *In re Covington Grain Co.,* 638 F.2d 1357, 1361 (5th Cir.1981). Keel is a New York corporation which was dissolved on October 6, 1975. Certificate of Dissolution, Exhibit I of the Affidavit of Sigmund Friedman. New York Business Corporation Statute section 1006 allows a dissolved corporation to continue litigation in which it is involved at time of dissolution. *See Chicago Title and Trust Co. v. Wilcox Bldg. Corp.,* 302 U.S. 120, 128–30, 58 S.Ct. 125, 128–30, 82 L.Ed. 147 (1937). Since these proceedings began prior to Keel's dissolution, Keel can continue as a party and is a person within section 67(c).

■ The debtor asserts that Warner "has not filed a claim against RCOA..." and therefore concludes that Warner is not aggrieved by confirmation of the plan. The definition of person aggrieved is broad. 315 F.Supp. at 106–07. Warner alleges to be involved in litigation with the debtor. The outcome of that litigation might create rights for Warner against the debtor. The

confirmation of the debtor's plan might detrimentally affect the rights thus created. *Id.* at 107. Such a possibility is sufficient to give Warner standing as a person aggrieved.

The above analysis applies in the case of Pickwick which is also allegedly involved in unresolved litigation with the debtor. The lawsuit is apparently pending before the bankruptcy court and until it is finally resolved Pickwick's rights could be affected by the confirmation of RCOA's plan. Pickwick thus is a person aggrieved under section 67(c).

Atlantic and RCOA are also involved in litigation. The bankruptcy court and the district court have held in favor of RCOA, but Atlantic has appealed to the United States Court of Appeals for the Third Circuit. Since the litigation is still pending, Atlantic is a person aggrieved and has standing to appeal the confirmation order.

All five (5) appellants before this court are persons and they are aggrieved by the order confirming RCOA's plan. They thus conform to the requirements of section 67(c).

RCOA argues that a second requirement to have standing is that an appellant must have appeared at the confirmation hearing. The requirement of appearing at a hearing was adopted by this district in 1944. *In re Mifflinburg Body Co.,* 54 F.Supp. 560, 561 (M.D.Pa.1944). The requirement is also enunciated in Collier on Bankruptcy. 2A Collier on Bankruptcy 1496–97 (14th Ed. 1978). The appellants cite no authority to the contrary and this court has found none.

The issue is whether each of the five (5) appellants appeared at the hearing on the confirmation of the plan. It is undisputed that Attorney Thompson appeared at the confirmation hearing. The dispute concerns whom he represented or whether the entity he claimed to represent existed.

■ The debtor's assertion is that the five (5) appellants were not represented at the confirmation hearing because at the hearing when he was asked to indicate whom he represented Attorney Thompson

did not explicitly name some of the appellants. The Supreme Court of the United States, speaking through Chief Justice John Marshall, held in 1824 that:

> The appearance of [a duly authorized attorney] in a cause, has always been received as evidence of his authority; and no additional evidence, so far as we are informed, has ever been required. This practice, we believe, has existed from the first establishment of our courts, and no departure from it has been made in those of any state, or of the Union. *Osborn v. Bank of the United States*, 22 [6 Wheat] U.S. 738, 838 [6 L.Ed. 204] (1824).

This language has been interpreted as putting the burden of production and persuasion on the party challenging an attorney's assertion as to whom he represents. *In re Sarah Allen Home, Inc.*, 7 B.R. 732, 734 (Bkrtcy.E.D.Pa.1980).

RCOA has offered as evidence to support its allegation that Thompson does not represent whom he claims to represent an affidavit of Sigmund Friedman. In his affidavit Mr. Friedman alleges to have spoken with the treasurer of Ivy Hill Communications. Ivy Hill was a creditor of RCOA. Thompson filed a notice of appeal in Ivy Hill's name and then withdrew the notice. The treasurer of Ivy Hill allegedly told Friedman:

> (a) Attorney John Thompson does not represent Ivy Hill;
> (b) Ivy Hill does not wish to appeal the Bankruptcy Court's June 18, 1982 confirmation Order; and
> (c) Neither Attorney Thompson nor any other person was authorized to appeal RCOA's confirmation Order on Ivy Hill's behalf or using Ivy Hill's name. Affidavit of Sigmund Friedman at paragraph 6.

Even assuming the reliability of this hearsay assertion, Thompson may represent appellants other than Ivy Hill. Attorney Thompson has filed documents with the bankruptcy court and with this court in which he claims to represent the five (5) appellants, United Artists, Warner, Keel, Atlantic, and Pickwick. The presumption is that he represents these appellants and represented these appellants at the confirmation hearing. Attorney Thompson's failure to clearly articulate whom he represented when asked to do so at the confirmation hearing is unfortunate. Apparently Attorney Thompson's affiliation with a law firm was in flux during the period in question. Because of the change in his legal affiliation and his failure to clarify which attorney represented the appellants, Attorney Thompson has left himself open to the assertions which the debtor has made. On these facts, Attorney Thompson has been saved by the presumption.

RCOA alleges that United Artists did not appear at the confirmation hearing because United Artists had been merged with Capitol and did not exist. Since it has previously been determined that United Artists may pursue legal proceedings in its own name even after the merger, RCOA's assertion is incorrect. The same basic analysis would apply to Keel.

The presumption that Attorney Thompson represents whom he says he does, the ability of United Artists and Keel to pursue legal proceedings, and Attorney Thompson's appearance at the confirmation hearing result in the legal appearance of all five (5) appellants at the confirmation hearing. Thus the appellants have standing to pursue their appeals.

The debtor also argues that compliance with Bankruptcy Rule 11–38(c) is a requirement for standing. Rule 11–38(c) says:

> (c) Objections to Confirmation. Objections to confirmation of the plan shall be filed and served on the debtor, and the creditors' committee, if any, at any time prior to confirmation or by such earlier date as the court may fix. An objection to confirmation on the ground that the debtor committed any act or failed to perform any duty which would be a bar to the discharge of a bankrupt is governed by Part VII of the Bankruptcy Rules. Any other objection is governed by Bankruptcy Rule 914.

The argument is that since only one of the appellants filed an objection (namely Unit-

ed Artists), the other four do not have standing to appeal the confirmation order.

 Rule 11–38 does not indicate that the filing of objections prior to confirmation or by an earlier date if the court so orders is a standing issue. The debtor does not point to any cases which have determined that compliance with Rule 11–38(c) is a prerequisite to appeal a confirmation order.

Two factors mitigate against the debtor's argument. First, Rule 11–38(d) seems to provide the consequences of a failure to comply with Rule 11–38(c). Rule 11–38(d) says:

> (d) Hearing on Confirmation. The court shall rule on confirmation of the plan after hearing on notice as provided in Rule 11–24. The hearing may be held at any time after the conclusion of the first meeting of creditors. If no objection is timely filed under subdivision (c) of this rule, the court may find, without taking proof, that the debtor has not committed any act or failed to perform any duty which would be a bar to the discharge of a bankrupt and that the plan has been proposed and its acceptance procured in good faith, and not by any means, promises, or acts forbidden by law.

The bankruptcy court, if no objections are filed, may draw certain conclusions about the plan without taking proof. The ability of the court to draw these conclusions is the direct consequence of a failure to comply with Rule 11–38(c).

The second factor is the impossibility of objecting to certain aspects of the confirmation proceedings within the Rule 11–38(c) deadline. If compliance with Rule 11–38(c) was a general requirement to appeal a confirmation order, then all events relating to the conducting of the confirmation hearing would be non-reviewable.

Rule 11–38(c) is not a requirement for standing to appeal the confirmation order. The four (4) appellants, Warner, Keel, Atlantic and Pickwick have standing to appeal the confirmation order even though they did not file objections under Rule 38–11(c).