**In re Ernest DYKES; Charlene Dykes, Debtors.**

**GENERAL MOTORS ACCEPTANCE CORPORATION**

v.

**Ernest DYKES and Charlene Dykes, Appellants,**

**Charles J. Dehart, III, Trustee.**

No. 93–7235.

United States Court of Appeals, Third Circuit.

Submitted under Third Circuit LAR 34.1(a) Oct. 1, 1993.

Decided Nov. 30, 1993.

Dorothy M. Feldman, Harrisburg, PA, for appellants.

J. Stephen Feinour, John C. Sullivan, Nauman, Smith, Shissler & Hall, Harrisburg, PA, for appellee.

Before: SCIRICA, ALITO and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The major question for decision in this appeal from a district court judgment affirming a bankruptcy court order is whether Debtor–Appellants Ernest and Charlene Dykes were "persons aggrieved" by the bankruptcy court's order, thereby conferring upon them standing to appeal the order to the district court and, in turn, to appeal that judgment to this court. We hold that Appellants are not "persons aggrieved." We therefore dismiss this appeal and remand this case to the district court with a direction to dismiss Appellants' appeal from the bankruptcy court.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 158(a). Because the district court's order of March 3, 1993 affirming the decision of the bankruptcy court was a final judgment, we have jurisdiction pursuant to 28 U.S.C. § 158(d). This appeal was timely filed on April 2, 1993.

We review findings of fact in bankruptcy matters under the clearly erroneous standard but in this case, as the district court observed, "the facts are undisputed." *In re Dykes,* No. 92–1852 (M.D.Pa. March 3, 1993).

We exercise plenary review over questions of law. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981).

## I.

Appellants Ernest and Charlene Dykes purchased a Pontiac 6000 automobile in November 1989 under an installment sales contract. The automobile dealership then assigned its rights under the contract to Appellee, General Motors Acceptance Corporation (hereinafter "GMAC"). Appellants made 19 of the required 48 payments before defaulting on their agreement in November 1991. Appellants filed for relief under Chapter 13 of the Bankruptcy Code on October 24, 1991 and, concurrent with their bankruptcy petition, they submitted their Chapter 13 plan (hereinafter "the Plan"). Under the Plan, Appellants would make monthly payments of $120 over 48 months to two creditors. The first ten monthly payments would be made solely to Debtors' lawyer, Dorothy M. Feldman, to satisfy her claim of $1,200. Thereafter, the payments would be made to GMAC to satisfy its claim. Specifically, Debtors' Plan stated:

> Class 3 Allowed Secured Claim shall be dealt with as follows:
>
> .         .         .         .         .
>
> Loan secured by lien on 1986 Pontiac 6000 will be paid lesser of fair market value of vehicle (cramdown—$2,787.50 at contract rate of interest) or balance of loan owed on date of bankruptcy filing.

App. at A41.

Thus, under the Plan submitted, no creditor except the attorney for Debtors would receive payments for the first ten months. As the secured creditor, GMAC would begin receiving payments on the eleventh month. GMAC objected to the Plan, contending that the value of its collateral, the 1986 Pontiac automobile, would be diminished if GMAC were forced to wait 11 months before receiving its first payment under the Plan.

On November 13, 1992, after notice and a hearing on GMAC's objections, the bankruptcy court concluded that payments to Debtors' attorney were entitled to some priority consideration under 11 U.S.C. §§ 507(a)(1) and 503(b). Relying on 11 U.S.C. § 1326(b), the court also determined that, although GMAC's claim was not entitled to super-priority status under Section 507(b), it would require that installment payments under an amended plan be equally divided between the Debtors' attorney and GMAC until the attorney received her $1,200.00 fee, at which time remaining installments would be paid to GMAC alone.

In reaching its decision, the bankruptcy court noted statistics introduced by GMAC demonstrating the likelihood of Chapter 13 failures. The court determined that "the statistics do establish a significant risk of plan failure in the context of Chapter 13 cases" and that "[t]here is no question that GMAC's collateral will depreciate over the period in which it would await its first payment under the Plan as proposed. Thus, if the Plan would fail, GMAC most likely would not obtain the value of its collateral." App. at A155–A156.

Accordingly, the bankruptcy court approved the amended plan in which Debtors' counsel and GMAC would share equally the monthly payments of $120 until counsel received her $1,200 fee. Thereafter, remaining payments would be made to GMAC.

We deem it significant that Appellants themselves are wholly unaffected by the terms of the amended plan. The number of payments that they are required to make and the amount of each payment are identical under both proposals. The only difference between the Plan originally offered and that approved by the bankruptcy court is the allocation of payments among the payees. Under the original Plan, Debtors' attorney was to be paid in full after 10 months, and under the amended plan she would have to wait 10 additional months. Under the original Plan, GMAC was required to wait 11 months before receiving any payment, and under the amended plan it would receive payments immediately and concurrently with Debtors' counsel.

Nevertheless, Appellants appealed to the district court, and later to us, seeking reversal of the bankruptcy court's order and reinstatement of the original Plan so that their

attorney could receive her fee in full at an earlier date. Essentially, Appellants argue that the bankruptcy court erred as a matter of law in relying upon Section 1326(b) as authority to order the concurrent payments, and that the district court erred in affirming that order. They contend that the bankruptcy court's order "is inconsistent with case law, Congressional intent and public policy." Brief for Appellants at 12.

We will not meet the central issue presented by Appellants relating to the interpretation of Section 1326(b). We have concluded that, because the amended plan ordered by the bankruptcy court has no effect upon the payment schedule of Appellants and only affects the time period in which their counsel receives payment of her fee, Appellants are not "persons aggrieved" and therefore lack standing to appeal the bankruptcy court's order.

## II.

■ The requirement of appellate standing in bankruptcy proceedings derives from Section 39(c) of the former Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (repealed 1978). This section limited appellate standing to a "person aggrieved by an order of a referee." A "person aggrieved" has been defined as a person whose rights or interests are "directly and adversely affected pecuniarily" by the order or decree of the bankruptcy court. *In re Fondiller*, 707 F.2d 441, 443 (9th Cir.1983). Although former Section 39(c) has no direct counterpart in the 1978 Bankruptcy Code, courts of appeals have recognized that the requirement of standing continues to be a prerequisite for appellate review in proceedings under the current Code. *See In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 269 n. 1 (3d Cir.1991) (Hutchinson, J., concurring); *see also In re Andreuccetti*, 975 F.2d 413, 416 (7th Cir.1992); *In re Clark*, 927 F.2d 793, 795 (4th Cir.1991); *In re Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir.1990); *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir.1989); *Kane v. Johns–Manville Corp.*, 843 F.2d 636, 641 (2nd Cir.1988); *In re Hipp, Inc.*, 859 F.2d 374, 375 (5th Cir.1988); *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987); *In re*

*Fondiller*, 707 F.2d 441 at 442–43 (9th Cir. 1983).

As the Court of Appeals for the Second Circuit noted:

These decisions reflect the understandable concern that if appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order.

*Kane*, 843 F.2d at 642.

## A.

Litigants are "persons aggrieved" if the order diminishes their property, increases their burdens, or impairs their rights. *In re Fondiller*, 707 F.2d at 442. Our court has long adhered to the "person aggrieved" standard. *See, e.g., In re United States Overseas Airlines, Inc.*, 419 F.2d 932, 933 (3d Cir. 1969). We have continued to invoke the "person aggrieved" terminology as it applies to bankruptcy appeals following the enactment of the current Bankruptcy Code. *See In re Marcus Hook*, 943 F.2d at 269 n. 1 (Hutchinson, J., concurring) ("[A]t least some of the objectors are aggrieved parties directly affected by the conflict between the order of sale and the final decree and as such should be able to assert their rights directly in the bankruptcy court.").

■ Although we did not specifically address the continued viability of the "person aggrieved" standard in *In re Marcus Hook*, we find no indication that Congress intended to "alter the right to appellate review by leaving undefined in the [current] Code the requisites for standing." *In re Fondiller*, 707 F.2d at 443. Moreover, bankruptcy courts in this judicial circuit consistently have relied upon the "person aggrieved" standard in cases subject to the current Bankruptcy Code. In *In re Specialty Foods of Pittsburgh, Inc.*, 91 B.R. 364, 373 (Bankr. W.D.Pa.1988), for example, the court held that the appellant lacked standing because he was not an individual whose " 'rights and interests were directly and adversely affected pecuniarily' " or whose "property has been diminished, burdens increased, or rights impaired." (quoting *In re El San Juan Hotel*,

809 F.2d at 154); *see also In re Record Club of America,* 28 B.R. 996, 997 (M.D.Pa.1983); *Connellsville Plaza v. Jiffy Foods Corp.,* 92 B.R. 136, 138 (W.D.Pa.1988); *In re Orlando Investors, L.P.,* 103 B.R. 593, 596–97 (Bankr. E.D.Pa.1989). We are satisfied that an appellant must qualify as a "person aggrieved" to be eligible for appellate review of a bankruptcy court order.

■■ Whether an appellant is a "person aggrieved" is generally considered a question of fact for the district court. *In re E.C. Ernst, Inc.,* 2 B.R. 757, 760 (D.C.N.Y.1980). In the instant case, the district court did not consider the standing issue. Because the relevant facts and necessary evidence are clearly before us and not in dispute, we consider it proper to address the issue ourselves. *See In re El San Juan Hotel,* 809 F.2d at 154 n. 3; *In re Fondiller,* 707 F.2d at 443.

### B.

The Court of Appeals for the Tenth Circuit addressed a scenario similar to the one before us in *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d at 940. There a debtor objected to the order of a district court affirming the bankruptcy court's decision to award the creditor attorney's fees as administrative expenses. In denying standing to the debtors, the court reasoned that the debtors had agreed to pay a fixed sum under their Chapter 13 plan. Consequently, the debtors had no interest in how that sum was allocated:

> The [debtors'] Chapter 13 plan has been confirmed.... [T]he total amount to be paid by the [debtors] under the latest plan is $13,050.00.... Inasmuch as the [debtors] have agreed to a payout totalling $13,050.00, they make no effective argument as to how they can be aggrieved by its allocation among the payees. They are, apparently, not liable for any further payout. Thus, since they are not directly and adversely affected pecuniarily beyond the extent to which they have already agreed, they have no standing to contest the award of attorney's fees at issue here.

*Id.*

■ We accept the reasoning of the Tenth Circuit and conclude that Debtors in this action similarly lack standing. Under both the original Plan submitted by Debtors and the plan as modified by the bankruptcy court, Debtors were required to pay $120.00 per month and to make the same number of monthly installments. The only difference between the two plans was that under the modified plan the attorney was no longer the exclusive beneficiary of the first series of payments; she was required to share them equally with GMAC and to wait an additional 10 months before payment in full. As was the case in *Holmes,* Appellants in this appeal have no pecuniary interest in the particular allocation of fixed payments.

### C.

■ The "person aggrieved" standard in bankruptcy appeals can be analogized to traditional doctrines of standing. *See* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531 (2nd ed. 1984) ("At times courts are tempted to draw from standing decisions in addressing such matters as the ... procedural rights of bankrupts."). A court employs standing doctrines when it refuses to consider a legal claim on the ground that, even though the claim may be meritorious, the litigant advancing it is not properly situated to raise it before the court. The focus is on the party, not the claim itself. "The requirement of standing 'focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated.'" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 484, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982) (quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)).

■ Based upon our analysis of bankruptcy appellate review standing requirements, we hold that Ernest and Charlene Dykes are neither proper appellants in this court nor were they proper appellants in the district court. To appeal from an order of a bankruptcy court one must show that the order diminishes one's property, increases one's burdens or impairs one's rights. Under the

undisputed facts here, Appellants were not so affected. Their appeal will be dismissed.

### III.

Appellate costs are taxed in the manner provided by Rule 39(a) of the Federal Rules of Appellate Procedure:

> Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court.

■ Under the circumstances of this case, we conclude that costs should not be assessed against Appellants. Costs will be assessed against Appellants' counsel, Dorothy M. Feldman, because only she stood to gain in the event of a successful appeal to the district court and to us.

Moreover, we are directing the Clerk to forward a copy of this opinion to the bankruptcy court with the suggestion that no attorney's fees be approved if claimed against Appellants or any bankrupts' estate for the prosecution of appeals to the district court or to this court in this matter.

### IV.

The appeal will be dismissed and the proceedings remanded to the district court with the direction to vacate its judgment and to enter an order dismissing the appeal from the bankruptcy court.