

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-1995

# Travelers Ins Co v HK Porter Co

Precedential or Non-Precedential:

Docket 94-3324

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Travelers Ins Co v HK Porter Co" (1995). *1995 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 94-3324

----------

TRAVELERS INSURANCE COMPANY,

Appellant

v.

H.K. PORTER COMPANY, INC.;
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS, of H.K. Porter Company, Inc.;
AIKEN COUNTY PUBLIC SCHOOLS;
ALTOONA AREA SCHOOL; DISTRICT;
ANDERSON COUNTY PUBLIC SCHOOLS;
BARNWELL SCHOOL DISTRICT #45;
BEREA INDEPENDENT SCHOOL SYSTEM;
BLACKWELL PUBLIC SCHOOLS; CENTRAL DAUPHIN SCHOOLS;
CHARLESTON COUNTY PUBLIC BUILDINGS;
CHARLESTON COUNTY PUBLIC SCHOOLS; CHESTER COUNTY
PUBLIC SCHOOLS; DILLON COUNTY PUBLIC SCHOOLS;
DYERSBURG CITY SCHOOLS; FAIRBANKS NORTH STAR BOROUGH;
GEORGETOWN PUBLIC SCHOOLS; GREENVILLE HOSPITAL SYSTEM;
GREENWOOD SCHOOL DISTRICT #51;
HAMILTON COUNTY PUBLIC SCHOOLS;
HORRY COUNTY PUBLIC BUILDINGS;
HORRY COUNTY PUBLIC SCHOOLS;
JASPER COUNTY PUBLIC SCHOOLS;
KERSHAW COUNTY PUBLIC SCHOOLS;
KERSHAW SCHOOL DISTRICT;
LANCASTER COUNTY PUBLIC SCHOOLS;
LEXINGTON COUNTY PUBLIC SCHOOLS;
MT. LEBANON SCHOOL DISTRICT;
NATRONA COUNTY SCHOOLS; ORANGEBURG SCHOOL DISTRICT #6;
ORANGEBURG COUNTY PUBLIC BUILDINGS;
PEKIN SCHOOL DISTRICT; RICHLAND COUNTY SCHOOL DISTRICT;
ROWAN COUNTY PUBLIC SCHOOLS; UNIVERSITY OF SOUTH CAROLINA;
WAKE COUNTY PUBLIC SCHOOLS;
WASHINGTON COUNTY PUBLIC SCHOOLS;
WILLIAMSBURG PUBLIC SCHOOLS

----------

On Appeal from the United States District Court

for the Western District of Pennsylvania
(D.C. Civil No. 93-01209)

----------

Argued Tuesday, November 29, 1994

BEFORE:  HUTCHINSON, NYGAARD and GARTH <u>Circuit</u> <u>Judges</u>

----------

(Opinion filed January 17, 1995)

----------

Mark J. Thompson (Argued)
Simpson, Thacher & Bartlett
425 Lexington Avenue
New York, New York  10017

<u>Attorney for Appellant</u>


Joseph E. Schmitt
George T. Snyder  (Argued)
Stonecipher, Cunningham, Beard
& Schmitt
125 First Avenue
Pittsburgh, Pennsylvania  15222
<u>Attorneys for H.K. Porter</u>
<u>Company, Inc., Appellee</u>


Timothy E. Eble
Frederick C. Baker  (Argued)
Ness, Motley, Loadholt,
Richardson & Poole
151 Meeting Street
Suite 600
Charleston, South Carolina  29402

<u>Attorneys for All Appellees</u>
<u>Except H.K. Porter Company,</u>
<u>Inc., and Official Committee</u>
<u>of Unsecured Creditors of</u>
<u>H.K. Porter Company, Inc.</u>

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

H.K. Porter Company, Inc. ("Porter"), a debtor in bankruptcy, was, and evidently is presently, insured by Travelers Insurance Company ("Travelers"). Certain school district creditors (the "Claimants") filed proofs of claims in the Porter bankruptcy alleging property damage due to asbestos installations. At some point, believing that the prosecution of their claims against Porter would be costly and without commensurate benefit, some of the creditors withdrew their claims, and others defaulted.

Thereafter, on hearing of a possibility that Travelers, as Porter's insurer, might be required to respond for damage claims against Porter, the school district creditors moved to vacate their withdrawals/defaults. Their motions were granted by the bankruptcy court, but with a restriction limiting any recoveries to insurance proceeds only.

Travelers now asserts that the bankruptcy court's order reinstating the claims, but limiting any recovery to insurance proceeds: (1) is void for lack of service on Travelers as a "party against whom relief is sought"; (2) was the product of "collusive prosecution" between Porter and the Claimants; and (3) in any event constituted an abuse of discretion because the Claimants had not shown "good cause" why their claims should be reinstated.

We neither reach nor address these contentions. Rather, we hold that Travelers was not a "person aggrieved" by the bankruptcy court's order and hence lacked standing to appeal from it, both in this Court and in the district court. We will therefore dismiss Travelers' appeal.

I

The facts relevant to our resolution of this appeal are clear and not in dispute. Thus, our normal review of factual findings made by the lower courts and conducted under the clearly erroneous standard has little relevance here.

Porter, an asbestos manufacturer, filed a voluntary petition for relief under Chapter 11 on February 15, 1991. The Official Committee of Unsecured Creditors (the "Committee") , which included the Claimants' counsel, was appointed on March 8, 1991. The bar date for proofs of claim against Porter was set for March 16, 1992. On that day, the Claimants filed 38 asbestos-related property damage claims (the "claims") against Porter totaling $8,364,330.27.[1] Porter filed objections to all of these claims.

_____

[1]. At oral argument before us we requested supplemental briefing from Travelers and the Claimants on the implications of the class action certified in the "School Asbestos" cases, In re Asbestos School Litigation, 104 F.R.D. 422 (E.D. Pa. 1984) and In re School Asbestos Litigation, 789 F.2d 996 (3d Cir.), cert. denied, __ U.S. __, 107 S.Ct. 182 (1986). In their brief, the Claimants represented that the following 14 Claimants were currently non-opted out members of the class: Aiken County Public Schools; Anderson County Public Schools; Barnwell School District #45; Blackwell Public Schools; Chester County Public Schools; Dillon County Public Schools; Fairbanks North Star Borough; Georgetown Public Schools; Greenwood School District #51; Jasper

A subsequent review by Claimants' counsel of Porter's disclosure statements revealed that there were approximately $50 million in estate assets available to satisfy claims pending against the estate. These claims included a potential $26 to $28 million priority claim from the Internal Revenue Service and as many as 100,000 asbestos-related personal injury claims. Porter's schedule of assets was silent as to any insurance available to cover the property damage claims asserted by the Claimants.

In light of the limited assets of the estate, and in particular the absence of relevant insurance coverage, the Claimants determined that the potential recovery was outweighed by the probable cost of pursuing their claims[2] and, at the urging of the Committee and of Porter, decided not to defend against Porter's objections. Consequently, by two "default orders" dated

(..continued)
County Public Schools; Lexington County Public Schools; Orangeburg School District #6; and Williamsburg Public Schools. In addition, Barnwell School District #45 is a named class representative in the School Asbestos litigation.

It was also represented that Porter, as a debtor in the School Asbestos litigation, had objected, and was still objecting, to the claims of the class; that no claims had been withdrawn in that proceeding; and that the non-opted out school districts had filed the instant action as a protective action.

The other claimants in the present action either had opted out or did not fall within the definition of the class.

Because of our disposition of the present litigation on standing grounds, we do not find it necessary to address any of the matters raised by the supplemental memoranda as they are not at issue before us.

[2]. The Committee apparently estimated that the available dividend payable to unsecured nonpriority creditors would be between 3% and 5%. App. 484.

May 22, 1992, and one "default order" dated May 26, 1992, three of the Claimants allowed their claims to be dismissed by default. App. 283, 293, 308. By order dated June 9, 1992 and styled "Agreed Order Withdrawing Claims," the remaining 35 Claimants withdrew their claims. App. 334.

Sometime following these orders, however, Porter's special insurance counsel discovered the existence of several insurance policies which he believed could potentially insure up to $70-$90 million in property damage claims.

Upon learning of this potential insurance coverage, the Claimants moved in the bankruptcy court to "Vacate Default Judgments and to Reinstate Dismissed or Withdrawn Claims," naming Porter and the Committee as Respondents. App. 482.

Because both Porter and the Committee had originally prevailed upon the Claimants to withdraw their claims due to the absence of insurance, neither saw fit to contest the motion to reinstate the claims, even though Porter apparently persists in its objections to the claims.[3]

However, Travelers (issuer of one of the newly discovered policies with coverage of $1 million), though not a party to the proceedings, had been closely monitoring the bankruptcy court's docket sheet. Upon learning of the Claimants'

---

[3]. We are informed that Porter has not withdrawn its objections to the Claims by the following statement in the Claimants' brief at 17: "H.K. Porter has filed objections to [the] claims. Thus, there continues to be the fundamental controversy as to . . . whether H.K. Porter has any liability on these claims." Neither Porter nor Travelers has responded to, nor have they addressed, this statement.

reinstatement motions, Travelers filed an "Objection of Travelers Insurance Company to [Claimants'] 'Motion to Vacate Default Judgments and to Reinstate Dismissed or Withdrawn Claims.'" App. 604.

While denying any liability to Porter or to any of the Claimants, Travelers moved in bankruptcy court against reinstatement of the claims, arguing substantially the same issues raised before the district court and before us.

Following a May 20, 1993 hearing attended by representatives of Travelers, the Claimants, the Committee and Porter, the bankruptcy court rejected Travelers' objections and, by order dated June 16, 1993, and opinion dated July 7, 1993, vacated its previous orders which approved the withdrawal of some of the claims and defaulted others. The order contained the following proviso:

> [F]or the purposes of payment such claims are reinstated only to the extent that they may attempt to seek a recovery on account of insurance coverage, if any, which is or may have been owned or carried by [Porter], and no claim may otherwise be made against estate assets.

App. 690.

The order made no reference to Travelers (or to any other putative insurer), and expressly stated that the bankruptcy court "makes no determination as to whether or not the affected claims are valid and enforceable claims and this order does not in any way speak to the merits of whether or not there is any

insurance coverage applicable or available to pay such claims."
Id.

Travelers appealed the order to the district court which, by order of May 17, 1994, affirmed the order of the bankruptcy court, holding: (1) that Travelers was not the "party against whom relief [was] sought" under Bankruptcy Rule 9014 and therefore need not have been served;[4] (2) that it was not necessary that Porter oppose the reconsideration motion in order for there to be a justiciable "case or controversy;" and (3) that the discovery of the insurance coverage satisfied Rule 60(b)(2)'s "new evidence" ground.[5]  The district court also rejected Travelers' contention that the Claimants, by not sufficiently conducting their own discovery, had failed to satisfy the "due diligence" requirement of Rule 60.  The district court concluded that the Claimants could not be faulted for relying on Porter's representations that no insurance existed.

[4].  Bankruptcy Rule 9014 provides that in certain contested matters "relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. . .."  (Emphasis supplied).

[5].  Federal Rule of Civil Procedure 60(b), made applicable to bankruptcy proceedings through Bankruptcy Rule 9024, provides in part as follows:

> **Relief From Judgment or Order**
> * * * *
> **(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.**  On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to more for a new trial under Rule 59(b). . ..

Travelers has denied throughout that it has any liability to Porter or to the Claimants, and, as earlier noted, Porter's objections to the claims apparently remain in place.

Travelers now appeals to this Court, raising much the same issues pressed below. Because we have concluded that Travelers' interest in the order reinstating the claims against Porter is too remote and contingent to satisfy the standing requirement of bankruptcy appeals, we have no occasion to address Travelers' other contentions.[6]

II

Section 39(c) of the Bankruptcy Act of 1898, 11 U.S.C. § 67(c) (1976) limited appellate standing in bankruptcy cases to "person[s] aggrieved by an order of a referee." Although this provision was repealed in 1978, it has been maintained by the courts as an essentially prudential requirement that only those who have been directly and adversely affected pecuniarily by an order of a bankruptcy court may bring an appeal. See In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1983). Notably, the standing requirement in bankruptcy appeals is more restrictive

_____

[6]. We do not reach Travelers' principal argument that Travelers (along with the other insurers) was the real "party against whom relief was sought" by the Claimants and hence had to be served with the motion papers. However, in light of our holding that Travelers is not a "person aggrieved" by the bankruptcy court's reinstatement order and hence lacks appellate standing, it would clearly be anomalous to hold that Travelers might have been considered a "party against whom relief was sought" and that the Claimants therefore were required to serve Travelers.

than the "case or controversy" standing requirement of Article III, which "need not be financial and need only be 'fairly traceable' to the alleged illegal action." Kane v. Johns-Manville Corp., 843 F.2d 636, 642 n. 2 (2d Cir. 1988) (citations omitted); cf. In re Chateaugay Corp., 141 B.R. 794, 799 n. 4 (S.D.N.Y. 1992), vacated as moot 988 F.2d 322 (2nd Cir. 1993).

"Person aggrieved" is, of course, a term of art: almost by definition, all appellants may claim in some way to be "aggrieved," else they would not bother to prosecute their appeals. In conventional disputes, the class of potential plaintiffs is defined by the constitutional doctrine of standing. But in bankruptcy proceedings, which typically involve a "myriad of parties . . . indirectly affected by every bankruptcy court order," Kane, 843 F.2d at 642, the need to limit collateral appeals is particularly acute. Thus, the "person aggrieved" doctrine:

> [E]xists to fill the need for an explicit limitation on standing to appeal in bankruptcy proceedings. This need springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.

In re Fondiller, 707 F.2d at 443. Standing has thus been denied to marginal parties involved in bankruptcy proceedings who, even though they may be exposed to some potential harm incident to the

bankruptcy court's order, are not "directly affected" by that order.  See Kane, 843 F.2d at 642 n. 2; In re Chateaugay, 141 B.R. at 799 n. 4.

We recently affirmed the continuing vitality of the "person aggrieved" doctrine in this Circuit.  See In re Dykes, 10 F.3d 184 (3d Cir. 1993).  In Dykes we approved the Ninth Circuit's view that one is a "person aggrieved" if the contested order "diminishes their property, increases their burdens, or impairs their rights."  Id. at 187 (citing In re Fondiller, 707 F.2d at 442).

There can be no contention that Travelers' property has been diminished by the bankruptcy court's order of June 16, 1993 merely because the claims of the school district creditors were reinstated.  As we discuss infra, Travelers is at least two steps removed from any possible diminution of its property. Nevertheless, Travelers argues that the reinstatement of the claims against Porter directly increased its pecuniary burdens and impaired its rights.

Although whether someone is a "person aggrieved" is normally a question of fact to be determined by the district court, because the facts relevant to our analysis are clear and undisputed, we find it unnecessary to remand the case to the district court for additional factual findings.  See In re Dykes, 10 F.3d 184, 188 (3d Cir. 1993); In re El San Juan Hotel, 809 F.2d 151, 154 n. 3  (1st Cir. 1987); In re Fondiller, 707 F.2d 441, 443 (9th Cir. 1993).   Indeed, the factual predicate for our

conclusion is straightforward, and was well summarized by

Travelers itself in its brief before us:

> When an insurer issues an indemnity policy to an insured, it assumes nothing more than derivative liability for any claim covered by the policy. Therefore, an insurer is not liable for a claim unless the insured is liable first.

Traveler's Brief at 28. To this we would add that even upon the fixing of the liability of the insured, an insurer has no derivative liability unless and until it is determined that the policy covers the acts for which the insured has been found liable.

We are satisfied that Travelers is not a "person aggrieved," as its interest is too contingent to have been "directly affected" by the order reinstating the claims against Porter. Travelers' potential exposure is doubly removed, turning both on the success of the Claimants in their prosecution of claims against Porter, and on a judicial determination that the policy issued by Travelers covers the claims, a construction which Travelers strenuously rejects. Further, although Porter did not contest the vacation of the orders withdrawing and/or defaulting the claims, it apparently has not withdrawn its objections to the claims themselves. Even the most generous view of these circumstances does not suggest that the order of reinstatement directly or immediately impacts on Travelers' pecuniary interests. See In re Fondiller, 707 F.2d at 443.

Clearly, to allow appellate standing under such

circumstances would be inconsistent with the "directly affecting" standard and the policies which underlie this standard.  Id.

Here, however, Travelers has seized on the fact that the bankruptcy court's order limited the potential recovery of the Claimants to any insurance covering Porter.  In effect, this limitation means that any sum eventually recovered by the Claimants will ultimately come, if at all, only from Porter's insurers, one of which may be Travelers.  Travelers urges that "[g]iven that the Bankruptcy Court Order reinstating the Claims is conditioned on relief being secured solely from the policies issued to Porter by Travelers and the other insurers, it certainly increases Travelers burdens and impairs its rights. . .." and that "the 'contingency' of Travelers ultimate liability on the Claims is irrelevant to the issue of its standing."  Travelers' Reply Brief at 7.  We disagree with both of these arguments.

First, we note that if, as Travelers contends, it has no obligations to Porter under the policy, then the order cannot affect, and thereby aggrieve, Travelers.  Second, even if the one million dollar policy allegedly issued by Travelers does oblige it to respond to the property damage claims now asserted, then the limiting language of the order still would have no detrimental effect on Travelers.  As an insurer covering the claims asserted, Travelers would necessarily be required to respond to those claims even if the order of court had not restricted recovery to insurance proceeds.  We therefore assign no weight to the bankruptcy court's provision limiting recovery

to insurance proceeds.  As to Travelers, that language is surplusage.

Finally, we reject Travelers' contention that the contingency of its exposure is irrelevant to the question of standing.  We are satisfied that standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in an adversary proceeding.  Such a person, here Travelers, is not "aggrieved."  In re Fondiller, 707 F.2d at 443.

Consistent with the view that appeal from bankruptcy proceedings is denied to "marginal parties in bankruptcy proceedings 'who face potential harm incident to the bankruptcy court's order but are not directly affected,'" In re Chateaugay Corp., 141 B.R. at 799 (quoting Kane, 843 F.2d at 642 n. 3), courts have recognized that an order which simply allows a lawsuit to go forward does not necessarily "aggrieve" the potential defendant for purposes of appellate standing.[7]

---

[7].   Travelers, in responding to the Claimants' contention that it has no standing, refers us to In re Record Club of America, Inc., 28 B.R. 996 (M.D. Pa. 1983), which involved an appeal from an order confirming the debtor's plan of arrangement. The district court in that case accorded standing to several corporations involved in litigation with the debtor on the ground that the plan of arrangement might affect the rights determined by the litigation.  Without commenting on whether litigation as such is enough to accord standing as a "person aggrieved," we observe first that in this case Travelers is not engaged in litigation with any of the claimants.  Second, while we acknowledge that Travelers is involved in litigation with Porter as to its insurance coverage obligations, that involvement is "presumably related to coverage for the reinstated Claims. . .," Travelers' Brief at 13, and thus has no bankruptcy nexus.  That litigation, which is wholly separate from Porter's bankruptcy

In In re Fondiller, one of the first cases to assert the common law version of "person aggrieved" after its statutory demise in 1978, the Ninth Circuit held that the debtor's wife could not appeal an order of the bankruptcy court appointing special counsel, even though there was a likelihood that the special counsel would bring suit against the wife.  The court stated that the wife's "only demonstrable interest in the order is as a potential party defendant in an adversary proceeding.  As such she is not a 'person aggrievced' [by the order].  The order did not diminish her property, increase her burdens, or detrimentally affect her rights."  707 F.2d at 443 (citations omitted).

A similar result was reached in In re El San Juan Hotel, which held that an order of the bankruptcy court granting the United States leave to sue a former trustee on behalf of the estate was not appealable by the former trustee.  The First Circuit stated that:

> As in Fondiller, the bankruptcy court order
> did not diminish [the trustee's] property,
> increase his burdens, or detrimentally affect
> his rights.  The former trustee does have an
> interest in defending himself against
> liability, but the order in question does not
> prevent [him] from doing just that, or from
> asserting any claim or defenses he may have,
> including a motion for summary judgment.

In re El San Juan Hotel, 809 F.2d 151, 155 (1st Cir. 1987) (citation omitted).  Here, as in In re El San Juan Hotel, while

(..continued)
proceedings, cannot suffice to satisfy the "directly affecting" standard for standing in bankruptcy appeals.

Travelers has an interest in defending itself against liability, it is not prevented by the bankruptcy court order from doing just that. Nor does the order prevent Porter or Travelers from asserting any claims or defenses that either may have. Indeed, Travelers has steadfastly maintained that its policy does not even cover Porter.

As the above-cited authorities recognize, a bankruptcy court order which simply permits a claim to be lodged or a lawsuit to go forward without passing on the merits does not necessarily "aggrieve" the potential defendant. Here Travelers is insisting that the bankruptcy court must vacate its order reinstating the claims. But Travelers, as a contingent insurer, rather than seeking to remedy the impairment of its rights or lift a pecuniary burden, is seeking a windfall at the expense of the Claimants. This is particularly so because if Travelers succeeds in disclaiming coverage vis-a-vis Porter, or if Porter succeeds in withstanding the claims asserted against it, no liability will ever be visited upon Travelers. Hence, Travelers can be no more "aggrieved" by the order of reinstatement than it was "aggrieved" when the Claimants filed their claims against Porter in the first instance.

III

In sum, we conclude that Travelers was not a "person aggrieved" by the contested order, and thus lacked standing to appeal, both in this Court and in the district court. We will therefore dismiss the appeal and remand the proceedings to the

district court with directions to vacate its judgment and to enter an order dismissing the appeal from the bankruptcy court.