**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3365

_____

In re: TEAM SYSTEMS INTERNATIONAL, LLC,
Debtor


STEVEN M. ACOSTA; JOHN S. MACIOROWSKI; CHRISTOPHER MOTT;
DEBORAH EVANS MOTT,
Appellants

v.

GEORGE L. MILLER, in his capacity as Chapter 7 Trustee for the bankruptcy estate of
Team Systems International, LLC

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:23-cv-01038)
District Judge:  Honorable Gregory B. Williams

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 4, 2025

_____

Before:  KRAUSE, PHIPPS, and ROTH, *Circuit Judges*

(Filed: March 26, 2026)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PHIPPS, *Circuit Judge*.

During the pendency of an appeal of judgments against it, a limited liability company filed for bankruptcy. On behalf of the LLC, the bankruptcy trustee negotiated a settlement that was approximately ten percent less than the appealed judgments. But that favorable discount was not enough for the members of the LLC, who were hoping to recover some of their equity interests in the LLC, so they objected to the proposed settlement on the ground that it was still too high. The Bankruptcy Court evaluated the proposed settlement, determined that it was reasonable, and approved it. The LLC's members appealed that order to the District Court, which affirmed the Bankruptcy Court's ruling. The members now appeal that decision. For the reasons below, we will affirm the judgment of the District Court.

## BACKGROUND

In June 2017, the Federal Emergency Management Agency published a request for proposals for the provision of bottled water. In response to that full and open competition, Team Systems International, a Delaware limited liability company with four members,[1] submitted a proposal and was awarded a five-year contract. To meet the demands of the contract, TSI entered into a consulting agreement with two other entities, GPDEV, LLC, and Simons Exploration, Inc., d/b/a Archangel International, referred to herein as 'the consultants,' to find suppliers of bottled water. The consultants identified one supplier, Niagara Bottling, LLC, and TSI promised the consultants 25% of the net income realized from the bottled water supplied by Niagara.

---

[1] Those members were "Deborah Evans Mott; her son, Christopher Mott; her husband, John Maciorowski; and Steven Acosta." *In re Team Sys. Int'l, LLC*, 640 B.R. 296, 302 (Bankr. D. Del. 2022).

2

Shortly after TSI was awarded the FEMA contract, Hurricane Maria hit Puerto Rico, and the needed bottled water exceeded Niagara Bottling's capacity. The consultants then found another supplier, Nestle Waters, for about half of the needed bottled water. In calculating the compensation due the consultants, however, TSI included only the net income from the water supplied by Niagara Bottling – not the net income from the water provided by Nestle.

The consultants sued TSI in federal court in Florida for the shortfall in their compensation from the net income for the Nestle-supplied bottled water. *See GPDEV, LLC v. Team Sys. Int'l, LLC*, 2021 WL 5035029, at *1 (N.D. Fla. Sept. 28, 2021). In August 2021, the case went to trial, and in response to special interrogatories, the jury determined that TSI's net income from the FEMA contract was about $25 million and that the consulting agreement had been modified so that it applied not only to water supplied by Niagara Bottling but also to water supplied by Nestle. *Id.* at *2. Consistent with those findings, the jury awarded around $6.2 million inclusive of nearly $1 million in prejudgment interest to the consultants. *Id.* TSI appealed those judgments to the Eleventh Circuit.

On January 18, 2022, while that appeal was pending and after TSI's opening brief was filed but before any additional briefing or oral argument, TSI filed for Chapter 11 bankruptcy in Delaware. *See In re Team Sys. Int'l, LLC*, 640 B.R. 296, 305 (Bankr. D. Del. 2022). That filing automatically stayed the Eleventh Circuit appeal. *See* 11 U.S.C. § 362(a)(1).

In response to a request by one of TSI's creditors, the bankruptcy was converted to a Chapter 7 liquidation. *In re Team Sys. Int'l, LLC*, 640 B.R. at 301, 322. *See generally* 11 U.S.C. § 1112(b). As a result of that conversion, a bankruptcy trustee was empowered

3

– in lieu of TSI's members – to manage and resolve the claims against TSI. *See generally* 11 U.S.C. § 704(a). The consultants filed claims against TSI for the full amount of the judgments they obtained in addition to post-judgment interest.

In exercising his duties, the trustee preliminarily objected to the consultants' claims. But after reviewing TSI's pending but stayed Eleventh Circuit appeal, the trustee was able to negotiate a settlement with the consultants. Under that proposed agreement, the consultants would reduce their claims by about $600,000, to a total of $5.6 million. In return, TSI would allow a general unsecured claim for the consultants in that amount and the parties would work to dismiss the appeal.

The trustee filed a motion to approve that settlement. *See* Fed. R. Bankr. P. 9019(a). TSI's members objected because they believed that TSI was likely to succeed on its Eleventh Circuit appeal, and if it did, then they further believed that the consultants would not win their breach-of-contract case and the value of the estate would increase by the full value of the judgments against it, not merely $600,000. After holding a hearing on this issue, the Bankruptcy Court approved the settlement as a reasonable exercise of the trustee's judgment.

TSI's members appealed that ruling to the District Court, *see* 28 U.S.C. § 158(a)(1), which affirmed the Bankruptcy Court's order on two grounds, *In re Team Sys. Int'l, LLC*, 2024 WL 5008854, at *3–5 (D. Del. Dec. 6, 2024). First, it held that TSI's members – though parties in interest under the applicable statute, *see* 11 U.S.C. § 1109(b), and thus able to object to the settlement in the Bankruptcy Court – nonetheless lacked a form of prudential standing, which may be referred to as 'bankruptcy appellate standing,' to appeal the Bankruptcy Court's approval of the settlement. *See In re Team Sys. Int'l*, 2024 WL 5008854, at *3–4. Second, the District Court determined that the Bankruptcy Court's

4

approval of the settlement was reasonable. *Id.* at \*5–11 (identifying the settlement as being supported by the applicable legal considerations, namely "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors" (quoting *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996))).

Through a timely notice of appeal, TSI's members invoked this Court's appellate jurisdiction to challenge that final decision. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A). In addition to several other challenges,[2] TSI's members attack the District Court's threshold basis for denying their appeal: its conclusion that they lacked bankruptcy appellate standing.

## DISCUSSION

As a baseline, there is no question that in the Bankruptcy Court, TSI's members could challenge the trustee's proposed settlement of the Eleventh Circuit appeal. Under the Bankruptcy Code, "[a] party in interest, including . . . an equity security holder[] . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); *see also In re PWS Holding Corp.*, 228 F.3d 224, 248–49 (3d Cir. 2000) (characterizing the party-in-interest requirement as "confer[ring] broad standing"). And on account of their equity interests in the estate, the members were 'parties in interest' who could challenge the trustee's proposed settlement of TSI's Eleventh Circuit appeal.

---

[2] Some of those arguments are grounded in procedural concerns, such as the denial of discovery requests and alleged coercion by the trustee in breach of his fiduciary duties. Others raise collateral challenges to the judgments on appeal to the Eleventh Circuit by arguing that those judgments illegitimately authorized an illegal contract under federal law, improperly modified a contract through parol evidence, and were void for a lack of diversity jurisdiction.

In appealing the Bankruptcy Court's approval of that settlement to the District Court, TSI's members had to establish their Article III standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (explaining that Article III standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong"). Under the modern tripartite test, a party may demonstrate Article III standing through proof appropriate to the stage of the case of (i) an injury-in-fact that is concrete, particularized, and actual or imminent; (ii) fairly traceable causation between the challenged act and the injury-in-fact; and (iii) redressability, meaning that the injury-in-fact "is capable of resolution in a manner consistent with the traditional understanding of the judicial process." *Lutter v. JNESO*, 86 F.4th 111, 124, 128 (3d Cir. 2023). TSI's members meet that test. They assert that the settlement agreement decreases the value of their equity interests, which suffices for a concrete, particularized, and actual injury-in-fact. The other two elements are satisfied as well because that injury-in-fact is fairly traceable to the Bankruptcy Court's approval of the settlement, and a vacatur of the Bankruptcy Court's ruling on appeal would redress the injury-in-fact.

In addition to the party-in-interest requirement for bankruptcy court and the Article III standing requirement to proceed in Article III courts, a party seeking to appeal a ruling from a bankruptcy court must make one more threshold showing: bankruptcy appellate standing. To meet that standard, a person's "rights or interests" must be "'directly and adversely affected pecuniarily' by an order of the bankruptcy court." *In re PWS*, 228 F.3d at 249 (quoting *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)). Although this requirement is a prudential "judge-made doctrine[]" as opposed to being derived from Article III or any extant statute, *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir.

2022),[3] it is "more restrictive" than both the other threshold showings because "in the absence of such a stringent standing rule, collateral appeals could proliferate and unduly slow the emergence of the filer from the proceedings," *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 371 (3d Cir. 2022). So while a decrease in valuation of their equity interests suffices for an injury-in-fact for purposes of TSI's members' Article III standing, to have bankruptcy appellate standing, they must demonstrate that they will leave the bankruptcy proceeding with less money as a result of the Bankruptcy Court's order approving the settlement agreement.[4]

The District Court concluded that TSI's members had not made that showing. On clear-error review of any factual findings regarding the determination that TSI's members lacked bankruptcy appellate standing, *see In re Dykes*, 10 F.3d at 185, 188, there is no definite and firm conviction that the District Court erred in finding a lack of bankruptcy appellate standing. Even putting aside the foundational uncertainty of whether any money

---

[3] Bankruptcy appellate standing has not always been prudential. It was originally developed as a form of statutory standing based on the phrase 'person aggrieved,' which was used in an earlier version of the Bankruptcy Code, *see* 11 U.S.C. § 67(c) (1976). *See generally In re U.S. Overseas Airlines, Inc.*, 419 F.2d 932, 933 (3d Cir. 1969) (per curiam) (developing bankruptcy appellate standing based on the term 'person aggrieved'). But even after the statutory provision containing that phrase was repealed by the Bankruptcy Reform Act of 1978, courts continued to give effect to bankruptcy standing as a prudential principle. And although the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014), questioned the doctrine of prudential standing as in tension with the "virtually unflagging" obligation of federal courts to hear and decide cases within their jurisdiction, *id.* at 167, TSI's members have not argued for the abrogation of bankruptcy appellate standing, *cf. In re Imerys Talc Am., Inc.*, 38 F.4th 361, 371 (3d Cir. 2022) (clarifying that bankruptcy appellate standing, also referred to as "the 'person aggrieved' standard . . . remains good law"). *But cf. Matter of E. Coast Foods, Inc.*, 80 F.4th 901, 906 (9th Cir. 2023) (questioning why courts have "continued to apply the person aggrieved rule in the absence of the statute providing the basis for doing so"), *cert. denied sub nom. Clifton Cap. Grp., LLC v. Sharp*, 144 S. Ct. 1064 (2024).

[4] As a prudential principle designed to facilitate the administration of bankruptcy proceedings, bankruptcy appellate standing may be more readily satisfied by the debtor and higher-order creditors as well as by creditors or even equity holders whose interests are adjudicated closer in time to the close of the bankruptcy proceeding.

will be left for equity holders, TSI's members have not shown that any ultimate pecuniary recovery will be greater without the settlement. That may be the case. But if the Eleventh Circuit were to affirm the judgments against TSI, then the members' potential recovery would be reduced by the $600,000 discount secured through the settlement. With that uncertainty as to whether the approval or rejection of the settlement will yield a greater recovery for TSI's members, their interest is "too contingent" for bankruptcy appellate standing. *Travelers Ins. Co. v. H.K. Porter Co.*, 45 F.3d 737, 742 (3d Cir. 1995).[5]

## CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

---

[5] TSI's members also allude to potential exposure to criminal penalties, *see, e.g.*, 18 U.S.C. § 287, or contractual clawbacks under the False Claims Act, *see* 31 U.S.C. § 3729(a), as a basis for bankruptcy appellate standing. But those concerns are even further removed from the bankruptcy proceeding than the trustee's settlement decision, and those do not constitute the direct and adverse pecuniary effects needed for bankruptcy appellate standing.