**CALIFORNIA OIL COMPANY,**
Appellant,

v.

**Joe D. HUFFSTUTLER, Trustee of Trice Production Company, Debtor,**
Appellee.

No. 20332.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1963.

Lawrence K. Benson, New Orleans, La., for appellant.

W. Dewey Lawrence, Tyler, Tex., for appellee.

Before RIVES, WISDOM and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

The appellee, Trice Production Company (hereinafter called "Trice"), applied to the District Court for the Eastern District of Texas, Tyler Division, to be reorganized under Chapter X of the Bankruptcy Act, 11 U.S.C. § 501 et seq. Its petition was approved, a trustee appointed, and a general protective order entered on October 15, 1962. On January 2, 1963, the trustee of Trice applied to the district court for an order preventing the appellant, California Oil Company (hereinafter called "California"), from violating the general protective order by instituting a hearing with the Louisiana Commissioner of Conservation relating to the revision of certain drilling and production units. It is from the order granting such an injunction which California appeals.

Trice is engaged in exploring for and producing oil and gas, and it owns the Broussard mineral lease and is operator of the so-called "Broussard Unit," which is located in the Riceville Field. This field produces gas and distillate. California owns the lease to and operates another unit, the "School Board Unit," located in the Riceville Field. Prior to Trice's reorganization proceeding, the Louisiana Commissioner of Conservation, after a public hearing and pursuant to California's application, issued an order establishing these and other drilling units and regulating production in the Riceville Field. Subsequently, but still prior to the reorganization proceeding, the Commissioner, after a hearing on an application by California, issued a second order revising the units. Trice participated in both of these hearings. Each of these orders contained a provision directing the operators of the existing units to apply for a further public hearing when sufficient geological and engineering information became available to justify the revision of any units. After the approval of Trice's petition for reorganization, California, believing that it had obtained such new information from the drilling of one of its wells, gave notice to Trice and others, pursuant to the Commission-er's new rules of procedure, that in approximately 27 days California would apply to the Commissioner for a public hearing to revise the units in the Riceville Field.

On receipt of California's notice of intention Trice's trustee applied for a show-cause order adjudging California in contempt of the general protective order or, alternatively, enjoining California from in any way moving, effecting, or participating in the dissolution of the Broussard Unit, or the reconstruction of a unit different from that unit. The general protective order issued when Trice's petition was approved stated that all persons were enjoined and stayed from:

> "commencing or continuing any action at law or suit or proceeding in equity against said debtor or said trustee in any court, or from executing or issuing or causing the execution or issuance out of any court of any writ * * * or other process for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon any property owned by or in the possession of the said debtor or said trustee, and from doing any act or thing whatsoever to interfere with the possession or management by said debtor or said trustee of the property and assets of the within estate, or in any way interfere with said trustee in the discharge of his duties herein, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this court over said debtor and said trustee and their respective properties * * *."

The trustee asserted that he was without funds to investigate California's findings or to properly present the interests of Trice to Commissioner in such proceedings. The court found this to be a fact and that the trustee would have sufficient funds in the near future. It found that California would not be materially injured by delay in the hearing, but that Trice would be irreparably damaged if the proceedings before the Commissioner

were had prior to the time when the trustee could investigate and prepare himself. The court concluded as a matter of law that it had jurisdiction of the matter and could in its discretion issue such orders as necessary to protect the interest of the debtor estate. Accordingly, on January 14, 1963, an injunction was entered enjoining California for 120 days from filing any application with the Louisiana Conservation Commission in an effort to change or reform in any manner the then existing Broussard Unit and School Board Unit or from attempting to obtain such a change. The order also stated: ."The Court retains jurisdiction over this decree and the matters affected thereby and upon proper showing by any interested party will exercise the right to modify such decree." On March 23, a little over a week prior to argument before this Court, the district court on the application of the trustee dissolved the injunction. The court, however, did not modify that part of the original order which overruled California's motion to dismiss for lack of jurisdiction or authority, nor did it modify the above-quoted clause retaining jurisdiction.

The questions presented are whether the dissolution of the injunction has made this case moot and, if not, whether the district court had the authority to enjoin California from instituting proceedings before the Louisiana Conservation Commission. We find that the case is not moot and that the court was without power to enter such an injunction.

In United States v. W. T. Grant Co., 1953, 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303, the Supreme Court said that as a general proposition the voluntary cessation of allegedly illegal conduct does not make a case moot—the legality of the challenged practices still remains to be settled. "The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion." The Court noted that the case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that

the wrong will be repeated. But his burden is a "heavy one." 345 U.S. at 633, 73 S.Ct. at 897–898, 97 L.Ed. 1303. Accord, e. g., Derrington v. Plummer, 5 Cir., 1956, 240 F.2d 922, cert. denied, 353 U.S. 924, 77 S.Ct. 680, 1 L.Ed.2d 719 (1957). This Court in National Labor Relations Board v. O. E. Szekely & Associates, 5 Cir., 1958, 259 F.2d 652, 654, approved the statement in Fink v. Continental Foundry & Machine Co., 7 Cir., 1957, 240 F.2d 369, 374, that if pending an appeal an event occurs which renders it impossible for the appellate court to grant *any* relief or renders the decision unnecessary, the appeal will be dismissed.

■ In the instant case, although the injunction was dissolved, the district court has retained jurisdiction over the matter and "upon showing by any interested party will exercise the right to modify such decree." The trustee has not attempted to show a lack of reasonable expectation that he would later need to prevent California from instituting proceedings before the Commissioner. His only reason for requesting the dissolution of the injunction was that he "is no longer faced with the emergency which prompted his application." There is no indication that future emergencies will not arise. This Court can grant relief in that it can hold the district court without jurisdiction over such a matter, thereby relieving California of the threat of the reservation of jurisdiction. Thus the case is not moot.

The Commissioner of Conservation of the State of Louisiana enforces Louisiana laws relating to the conservation of oil and gas. LSA–Rev.Stat. 30:4. His orders are subject to judicial review by suit for injunction in the East Baton Rouge state district court, and there is a statutory right of appeal from that court. LSA–Rev.Stat. 30:12, 30:15. There is no indication that Trice made any effort to obtain from the Commissioner postponement of the hearing, nor is there any indication that the Commissioner would have denied the request or not given a fair hearing. In fact, the new rules of procedure adopted by the Commissioner

on June 29, 1962, were stated to be for the purpose of allowing interested parties time to settle or narrow their points of differences before the hearing.

It is clear that absent some specific grant of power by the Bankruptcy Act, the district court had no authority to interfere at this stage with California's application before the Commissioner. In Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, the plaintiff sued in a federal court on diversity jurisdiction and lack of due process, asking it to enjoin the execution of an order of the Texas Railroad Commission permitting the drilling and operation of certain oil wells. The Supreme Court held that even assuming the district court had jurisdiction, it should have declined to exercise it:

> "These questions of regulation of the industry by the state administrative agency, whether involving gas or oil prorationing programs or Rule 37 cases, so clearly involves (sic) problems of Texas policy that equitable discretion should be exercised to give the Texas courts the first opportunity to consider them." 319 U.S. at 332, 63 S.Ct. at 1106–1107, 87 L.Ed. 1424.

In Natural Gas Pipeline Co. of America v. Slattery, 1937, 302 U.S. 300, 58 S.Ct. 199, 82 L.Ed. 276, the plaintiff asked for an injunction by a federal court restraining the defendant from enforcing an order of the Illinois Commerce Commission which directed the plaintiff to open its records and accounts to inspection by, and furnish certain data to, the Commission. The plaintiff contended that the cost would be so great as to place an unconstitutional burden on commerce. The Supreme Court denied relief, noting that the Commission, if asked, could have modified the order and that there were adequate means for review under state law.

Thus the district court may not use its equitable discretion as a basis for interfering with the Louisiana Commissioner. Moreover, we think that the Bankruptcy Act does not authorize a district court to enjoin a party from applying to the Louisiana Conservation Commissioner for a revision of drilling units.

Section 111 of the Bankruptcy Act, 11 U.S.C. § 511, states: "Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located." And section 116(4), 11 U.S.C. § 516(4), adds that the court may, "in addition to the relief provided by section 29 of this title, enjoin or stay until final decree the commencement or continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor." But as the Supreme Court said in Callaway v. Benton, 1949, 336 U.S. 132, 142, 69 S.Ct. 435, 441–442, 93 L.Ed. 553, "There can be no question, however, that Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in some way affect the debtor's estate."

The case of Palmer v. Massachusetts, 1939, 308 U.S. 79, 60 S.Ct. 34, 84 L.Ed. 93, involved a railroad reorganization under section 77 of the act. The trustees, under Massachusetts law, had applied to the state's Department of Public Utilities for leave to abandon 88 passenger stations. A number of hearings had been held and the matter was still pending when the trustees applied to the district court for an order directing abandonment. The lower court ordered the abandonment, but was reversed by the Supreme Court. The Supreme Court said that if this familiar power of the state were to be deemed withdrawn by Congress in bankruptcy legislation, evidence of that withdrawal should be fit language within the act; and absent such expression of intent, the Court could not declare the power to be in the district court. While noting that the statute gives the bankruptcy court "exclusive jurisdiction of the debtor and its property wherever located," the Court stated that as concerns the carrier's relation to the state:

"It has become the settled social policy both of the states and the nation to entrust the type of public interest here in question to expert administrative agencies because of 'the notion,' as Judge Learned Hand pointed out below, 'that a judge is not qualified for such duties.'" 308 U.S. at 86, 60 S.Ct. at 37–38, 84 L.Ed. 93.

And the Court concluded:

"But, in any event, against possible inconveniences due to observance of state law we must balance the feelings of local communities, the dislocation of their habits and the overriding of expert state agencies by a single judge sitting, as in this case, in another state, removed from familiarity with local problems, and not necessarily gifted with statesman-like imagination that transcends the wisdom of local attachments." 308 U.S. at 89, 60 S.Ct. at 38–39, 84 L.Ed. 93.

The case of In re Chicago Rapid Transit Co., 7 Cir., 1942, 129 F.2d 1, involved the reorganization of a public transportation utility which was subject to the regulatory jurisdiction of the Illinois Commerce Commission. As to determining the extent of bankruptcy power to protect the estate, the court said that whatever differences there may be in the phraseology of the various sections of the act, the reasoning of the Supreme Court in its decisions under these various sections leads to the same end. Of the Palmer case the court said:

"This is clear pronouncement that thus far Congress has not seen fit to empower bankruptcy courts with jurisdiction to determine the questions which confront state utility commissions in regulation of intrastate utilities, such as whether a service should be abandoned or whether public convenience and necessity require continuation. Thus far, then, these powers are still lodged in the state authorities and with them the bankruptcy court may not interfere. * * * It may not itself regulate an intrastate public service, or interfere with regulation by the state. Its trustees, in operating a bankrupt utility, must comply with valid statutory regulation by the state." 129 F.2d at 5.

The Palmer case was based on the policy favoring control over curtailment of local railroad services by the regulatory authorities of the states. Statements by the Supreme Court in Burford v. Sun Oil Co., supra, lead us to the conclusion that there is an equally strong policy favoring state administrative regulation of the conservation of oil and gas. The Court in Burford described the creation of a general regulatory system for the conservation of oil and gas as being "as thorny a problem as has challenged the ingenuity and wisdom of legislatures." 319 U.S. at 318, 63 S.Ct. at 1099–1100, 87 L.Ed. 1424, quoting from Railroad Comm. of Texas v. Rowan & Nichols Oil Co., 310 U.S. 573, 579, 60 S.Ct. 1021, 84 L.Ed. 1368. The Court observed that for geologic reasons each oil and gas field must be regulated as a unit for conservation purposes. "The federal government, for the present at least, has chosen to leave the principal regulatory responsibility with the States, but does supplement state control." 319 U.S. at 319, 63 S.Ct. at 1100, 87 L.Ed. 1424. And the Court pointed out the state's interest in such regulation:

"Texas' interests in this matter are more than that very large one of conserving gas and oil, two of our most important natural resources. It must also weigh the impact of the industry on the whole economy of the State and must consider its revenue, much of which is drawn from taxes on the industry and from mineral lands preserved for the benefit of its educational and eleemosynary institutions. * * * Of far more importance than any other private interest is the fact that the over-all plan of regulation, as well as each of its case by case manifestations, is of vital interest to the general public which must be assur-

ed that the speculative interests of individual tract owners will be put aside when necessary to prevent the irretrievable loss of oil in other parts of the field." 319 U.S. at 320, 324, 63 S.Ct. at 1100–1101, 1102–1103, 87 L.Ed. 1424.

On comparing the Palmer and Burford cases, we conclude that the bankruptcy act does not authorize the district court to prevent California from instituting with the Louisiana Conservation Commission proceedings which are a part of the state's regulatory scheme for the conservation of oil and gas. This is especially true where the alleged injury to the bankrupt estate was a need for a delay in the hearing, and which delay could have been granted by the Commissioner had it been requested.

Accordingly, the judgment is reversed and the cause remanded with directions to dismiss the application of the trustee of Trice.

Reversed and remanded with directions.