**Charest D. THIBAUT, Jr.,**
**Plaintiff-Appellee,**

v.

**J. Clifford OURSO, Sr., et al.,**
**Defendants-Appellees,**

v.

**George E. McNUTT, Jr.,**
**Defendant-Appellant.**

No. 81–3420.

United States Court of Appeals,
Fifth Circuit.

May 19, 1983.

Rehearing Denied Aug. 22, 1983.

Martzell, Montero & Lamothe, John R. Martzell, New Orleans, La., for defendant-appellant.

Donald R. Mintz, Maureen O'Connor Sullivan, New Orleans, La., for Thibaut.

John Dale Powers, Michael H. Rubin, Robert Kleinpeter, Baton Rouge, La., for Clifford Ourso, Sr. and David Ourso.

A. Leon Hebert, Baton Rouge, La., for Carl Baldridge.

Thomas R. Bryan, Baton Rouge, La., for Redfield Bryan and Carol Ourso Bryan.

Before BROWN, GOLDBERG and HIGGINBOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This case concerns the settlement of a protracted dispute over the sale of a number of shares of stock. George McNutt, Jr., defendant-appellant, asks us to vacate a final judgment of the district court adopting, and ordering him to sign a settlement document which he claims does not truly reflect the terms of the settlement to which he agreed. Under court order, McNutt signed the settlement and ancillary documents. As he did not procure a stay of the judgment, the provisions of the agreement took effect. Not only did money, promissory notes and securities change hands, but three pending and related Louisiana state court suits were dismissed with prejudice. Because we cannot possibly undo the effects of the judgment and afford McNutt the relief which he seeks, we must dismiss the appeal.

On January 15, 1974, Charest Thibaut, Herman Taylor, Jr., and Gary Anderson, Jr. purchased a total of 475,269 shares of stock in the Great American Corporation (GAC)[1] from J. Clifford Ourso, Sr., David Ourso, McNutt and other stockholders.[2] Thibaut and the other buyers paid for the stock with cash and promissory notes.

After legal action by a minority stockholder and disagreements over whether Thibaut and the other buyers were to have received control of American Bank, a rescission of the sale was executed on December 30, 1974, between the buyers and every seller except McNutt. McNutt did not agree to the rescission and retained Thibaut's promissory notes. In the spring of 1976, he brought suit against Thibaut in a Louisiana court for default on those notes.

On December 21, 1976, Thibaut filed the present suit against all the original sellers, alleging fraud and misrepresentations in the original sale of the stock, in violation of federal and state securities laws. Thibaut sought rescission of the sale, compensatory damages of two million dollars, attorneys' fees, and other relief.

After some procedural maneuvering, conferences were held before then U.S. Magistrate Frank Polozola. A settlement was agreed to, and the district court dismissed Thibaut's action against the sellers. The settlement conference was not transcribed.

On December 31, 1979, all the parties except McNutt signed a settlement document prepared by attorneys for J. Clifford Ourso. On January 11, 1980, Ourso moved to enforce the settlement in accordance with that document. McNutt, however, claimed that the document did not reflect the terms of the settlement.[3] The motion was withdrawn and the parties instructed to try and work out their differences.

On November 17, 1980, after futile negotiations, Thibaut moved to enforce the same settlement document. As no opposition to the motion was filed, it was granted by Judge Polozola, now on the district court bench, on January 5, 1981.[4] McNutt and four other defendants filed a motion for reconsideration or new trial, upon which a

---

1. Great American Corporation is not a generic corporate name, but rather the bank holding company for the American Bank & Trust Company (American Bank) in Baton Rouge, Louisiana.

2. The other sellers, also defendants in this action, were Carl Baldridge, Rolfe H. McCollister, J.D. Pittman, Max Pace, Enloe Kee, J. Clifford Ourso, Jr., Redfield Bryan, and Carol Ourso Bryan. For the sake of brevity, we will simply refer to this group of sellers as "Ourso."

3. At oral argument before this Court, counsel for McNutt agreed that a settlement had in fact been reached and that the ensuing dispute was as to whether the settlement document accurately reflected the settlement's terms.

4. McNutt's counsel explained his failure to oppose the motion as due to confusion over whether a hearing date had been set.

hearing was held. On June 10, 1981, by minute entry, the district court denied the motion. The court ordered the settlement document to be summarily enforced, and ordered McNutt to sign the document. The court made final judgment to that effect. On July 15, 1981, McNutt filed notice of appeal.

On July 21, 1981, acting upon McNutt's motion, Judge Polozola set supersedeas bond of $1,500,000 for staying the judgment. Bond was never posted. In August, 1981, McNutt signed the settlement agreement and related documents, while claiming to reserve his right to appeal.[5]

On appeal, McNutt raises the following issues:

"1. Was the settlement ordered and enforced by the District Court one which required a written document to which all parties gave their mutual consent before settlement could be enforced?

2. Does the record contain substantial evidence that the settlement document ordered enforced by the District Court was in fact a mutually agreed upon settlement among the parties?

3. Were there material facts concerning the purported settlement sought to be enforced which required a factual hearing by the District Court prior to enforcing the settlement?

4. Was George E. McNutt, Jr. released by the rescission and release executed by the plaintiffs and all other defendants on December 30, 1974?

5. Is the plaintiff's action barred by the statute of limitations?"

We do not, and cannot, determine the merits of these claims. As McNutt did not obtain a stay of the district court's judgment, the provisions of the settlement document took effect. Among those provisions was the dismissal, with prejudice, of three pending state court actions. This court cannot resurrect those actions. To vacate the rest of the settlement would severely prejudice the rights of third parties and parties to this suit.

McNutt correctly points out that ordinarily a party does not need to obtain a stay of the judgment of the district court in order to protect his right of appeal. *American Grain Ass'n v. Lee-Vac, Ltd.,* 630 F.2d 245, 247 (5th Cir.1980). Nor, as a general rule, will an appeal be dismissed because the appellant has accepted the benefits of the judgment if that acceptance was not voluntary and intentional. *International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888 (5th Cir.1977). In *American Grain Ass'n,* however, this Court recognized that the " 'consequence of failing to obtain a stay is that the prevailing party may treat the judgment of the district court as final. . . .' 9 J. Moore, *Federal Practice,* ¶ 208.03, at 8–9 (2d ed. 1979). Thus, in the absence of a stay, action of a character which cannot be reversed by the court of appeals may be taken in reliance on the lower court's decree. As a result, the court of appeals may become powerless to grant the relief requested by the appellant. Under such circumstances, the appeal will be

---

**5.** Under the terms of the judgment, Thibaut paid McNutt $100,000 in cash. McNutt transferred and assigned to Thibaut all of McNutt's right, title and interest in and to the promissory notes given by Thibaut and the other two buyers for McNutt's GAC stock. Thibaut sold 45,-156 shares of GAC stock, in various amounts, to certain of the original sellers, the price payable to Thibaut in cash and negotiable promissory notes. Thibaut then turned over to McNutt the cash and notes given him in payment. The various parties released and discharged all claims arising from the purchase or sale of GAC stock. In addition to the instant suit, three state court suits were dismissed with prejudice.

The three suits dismissed were *McNutt v. Thibaut,* No. 192,752, *Division "D," 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana; Republic Securities Corp. v. American Bank & Trust Co.,* No. 212,115, *Division "J," 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana;* and *Ourso v. Thibaut,* No. 198,307, *Division "H," 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana.* All filed cross-claims and counter-claims were also dismissed with prejudice.

The full text of the settlement document adopted and enforced by the district court is appended to this opinion. That appendix is not published in the official Reporter.

dismissed as moot. *Moore, id.* at 8–10." [6] 630 F.2d at 247. In an earlier case, *National Labor Relations Board v. O.E. Szekely and Associates, Inc.,* 259 F.2d 652 (5th Cir. 1958), this Court referred to *Fink v. Continental Foundry & Machine Co.,* 240 F.2d 369 (7th Cir.1957) and approved its holding that "if, *pending an appeal an event occurs which renders it impossible for appellate court to grant any relief or renders the decision unnecessary, the appeal will be dismissed as moot."* 259 F.2d at 654 (emphasis in original). *See also California Oil Co. v. Huffstutler,* 322 F.2d 596 (5th Cir.1963).

This is such a case. It is impossible for this Court to vacate the judgment below, for the dismissal of the state court actions has sent that portion of the settlement irretrievably beyond our reach. Nor can we simply take the $100,000 back from McNutt, return him the promissory notes, and leave the rest of the judgment intact, for it is clear from the record that the numerous settlement provisions were interdependent. Even if we were to hold for McNutt on the merits of the case, we could not possibly return the parties to the suit, and third parties, to the legal positions they held before the settlement took effect.

McNutt protests that such a result is unfair because he was "unable" to post the $1,500,000 bond set by Judge Polozola. This argument does not ring true, however. The record contains absolutely no evidence showing that McNutt was unable to come up with the bond. In fact, McNutt never even attempted to raise the bond or to investigate its cost. McNutt never moved in either the district court or this Court to reduce the amount of the bond. He simply did not post the bond, then signed the papers and allowed the judgment to go into effect, knowing fully well that the judgment required the dismissal with prejudice of the claims then pending in the Louisiana courts. He cannot ask this Court to reconstruct a legal and financial puzzle which is now missing several pieces.

6. Although *American Grain Ass'n* was a bankruptcy case, the Court was here discussing a

Clearly, McNutt fully intended throughout the proceedings to appeal the judgment of the district court. Nevertheless, he failed to take the actions necessary to enable this Court to reach the merits of the appeal. We cannot grant any relief and have no choice but to dismiss the appeal as moot.

APPEAL DISMISSED AS MOOT.

generally applicable legal principle rather than any rule specific to bankruptcy law.