**In re Merritt Eugene WILLIAMS and Shirley Kay Williams, Debtors.**

No. 94–4126–SAC.
Bankruptcy No. 89–40416–7.

United States District Court,
D. Kansas.

March 8, 1995.

Dan E. Turner and Phillip L. Turner, Turner Law Office, Topeka, KS for debtors.

## MEMORANDUM AND ORDER

CROW, District Judge.

The debtors, Merritt and Shirley Williams, appeal the bankruptcy court's order filed February 9, 1994, which approved the trustee's compromise with Caney Valley National Bank ("CVNB") and the bankruptcy court's order filed July 1, 1994, denying the debtors' motion to reconsider. Counsel for CVNB submitted the compromise approval order that was signed and filed on February 9th. The debtors argue this order essentially approved a different compromise than the one that had been represented in both the trustee's application and the written settlement agreement between the trustee and CVNB. The debtors believe the trustee's application and the settlement agreement contemplate CVNB withdrawing all unsecured claims to the bankrupt estate. In the bankruptcy court's own words, its order of February 9, 1994, has the effect of "merely subordinating its [CVNB's] unsecured claim to the other unsecured claims against the estate." (Order filed July 1, 1994, Bkcy.Dk. 327). The debtors ask the district court to reverse and direct the bankruptcy court to modify its approval order so that CVNB will have withdrawn all unsecured claims against the bankrupt estate.

## FACTS

The trustee moved the bankruptcy court for approval of his compromise with CVNB resolving all issues between this creditor and the estate. The trustee's application states,

**534**

in relevant part: "The settlement will waive any deficiency claim that the CVNB [h]as against the bankruptcy estate, thereby freeing up those funds for other unsecured creditors." Attached to the trustee's motion was the settlement agreement which included the following pertinent paragraph:

10. The Bank shall waive its right to share in any distribution to unsecured creditors as a result of its unsecured claim. It shall withdraw its unsecured claim by filing a Notice of Withdrawal in substantial conformity with Exhibit C.

The debtors filed their objection to the proposed compromise and settlement agreement.

On December 21, 1993, the bankruptcy court heard the trustee's motion and the debtors' objection. While making its findings on fairness, the bankruptcy court took up whether CVNB was waiving its deficiency claim:

THE COURT: Well, because there are other creditors who will be getting that money. They're not waiving their deficiency. They're essentially, if you want to call it, subordinating their claim as an unsecured creditor to all other creditors in this estate. I assume that that's what the intent is. I don't think for a moment they believe that if there were no claims to the estate that this money's going to go back to the debtor.

MR. HAMILTON [CVNB's Counsel]: That's correct.

THE COURT: I mean really what they have done, and it doesn't say this, but what they have done is say: Well, we're not going to make a claim to this money in this estate and this money is to go to other creditors. I mean that is what the intent is, it says that.

MR. TURNER [Debtor's Counsel]: I understood that portion.

THE COURT: They waive their right to chair [share] in distribution of unsecured creditors. As a result of its unsecured claim, it will withdraw it by filing a notice of withdrawal. That's because they don't want to share, but I have the feeling that that's—but what they're really talking about is they're subordinating their claim

to all other unsecured creditors; and therefore, this 15,7 [$15,700] will go to them.

(Tr. 60–61). The bankruptcy court approved the compromise and directed CVNB's counsel to submit a proposed order approving the compromise.

The bankruptcy court signed and filed the submitted order on February 9, 1994. In relevant part, the order provided: "The Bank shall subordinate its unsecured claim to other allowed unsecured claims." (Bkcy.Dk. 311 at ¶10). The debtors timely filed a motion to reconsider arguing the February 9th order should have required CVNB to withdraw its entire unsecured claim rather than just subordinating it.

The bankruptcy court filed its order on July 1, 1994, denying the debtors' motion to reconsider. The bankruptcy court found that the terms of its order did not differ from those intended by the settlement agreement:

[A]t the hearing on the motion on December 21, 1993, the Bank made it clear that it was waiving only its right to share in estate distributions to unsecured creditors, not its right to receive any balance that might remain after all unsecured claims are paid or to have a nondischarged unsecured claim against the debtors if it prevails on its pending § 727 objection to discharge against them. That is, it was merely subordinating its unsecured claim to the other unsecured claims against the estate.

(Bkcy.Dk. 327). The bankruptcy court understood the debtors to argue they should be given the benefit of an agreement to which they were never a party. The bankruptcy court concluded that "Since they [the debtors] were not parties to the agreement, they have no standing to insist that it give them a benefit not intended by the Bank and the trustee." (Bkcy.Dk. 327).

**JURISDICTION**

The parties agree the debtors took a timely appeal from a final order. The facts, however, present another jurisdictional issue. Do the debtors have standing to appeal the bankruptcy court's orders approving the

trustee's compromise with CVNB of two adversary proceedings and other matters? The parties' briefs are silent on this issue.

■ Standing to bring an appeal is a jurisdictional issue which this court has a duty to raise and decide on its own. *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993); *In re Thompson,* 965 F.2d 1136, 1140 (1st Cir.1992). The Tenth Circuit recently summarized the appellate standing rules:

> The Bankruptcy Code of 1978, 11 U.S.C. § 101 *et seq.,* does not contain an explicit grant or limitation on appellate standing. Relying on pre-Code law, however, a number of courts, including this one, *Holmes v. Silver Wings Aviation, Inc.,* 881 F.2d 939, 940 (10th Cir.1989), have adopted a standard that requires an appellant to show that he is a "person aggrieved" by the challenged bankruptcy court order. That is, only a person "whose rights or interests are directly and adversely affected pecuniarily by the decree or order of the bankruptcy court" may appeal. *Id.* at 940 (citing *Fondiller v. Robertson (In re Fondiller),* 707 F.2d 441, 442–43 (9th Cir.1983) (internal quotations and other citations omitted). "Litigants are 'persons aggrieved' if the order [appealed from] diminishes their property, increases their burdens, or impairs their rights." *GMAC v. Dykes (In re Dykes),* 10 F.3d 184, 187 (3rd Cir. Nov. 30, 1993) (citing *Fondiller,* 707 F.2d at 442). The "person aggrieved" test is meant to be a limitation on appellate standing in order to avoid "endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order." *Holmes,* 881 F.2d at 940.

*In re American Ready Mix, Inc.,* 14 F.3d 1497, 1500 (10th Cir.) (footnotes omitted) (a post-petition professional employee of debtors lacked standing to appeal orders denying recusal, granting fees to trustee's accountant, and lifting the automatic stay for a creditor to foreclose upon debtors building), *cert. denied,* —— U.S. ——, 115 S.Ct. 77, 130 L.Ed.2d 31 (1994). In short, a person aggrieved has standing to appeal, and a litigant is a person aggrieved if the order being appealed diminishes the litigant's property, increases his burdens, or impairs his rights.

■ The rule on a debtor's appellate standing that remains from pre-Code days is as follows:

> Ordinarily under the Bankruptcy Act, 11 U.S.C.A. app. § 67(c), a bankrupt was found not to be a "person aggrieved" because adjudication absolved the bankrupt of liability and he had no interest in the distribution of property of the estate since the bankrupt's property had passed to the trustee by virtue of the Bankruptcy Act. Thus, a hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate, since such an order would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights. (citations omitted). The general rule evolved that only the trustee has standing to appeal from a bankruptcy court order. (citation omitted).

*In re El San Juan Hotel,* 809 F.2d 151, 154–55 (1st Cir.1987) (footnotes omitted); *see Willemain v. Kivitz,* 764 F.2d 1019, 1022 (4th Cir.1985) (Being typically insolvent, a debtor has no interest in how his assets are distributed). Therefore, a debtor is not a person aggrieved by a bankruptcy court order affecting the administration of the estate "[u]nless the estate is solvent and excess will eventually go to the debtor or unless the matter involves rights unique to the debtor." *In re Weston,* 18 F.3d 860, 863–64 (10th Cir.1994) (Held that the debtor lacked standing to appeal an order upholding the election of a Chapter 7 trustee). The second exception would include orders that affected "the terms, conditions and extent of a debtor's discharge." *In re El San Juan Hotel,* 809 F.2d at 155 n. 6; *see Weston,* 18 F.3d at 864 n. 3.

■ The debtors have the burden of demonstrating "a direct and adverse pecuniary interest" in the orders on appeal. *In re American Ready Mix, Inc.,* 14 F.3d at 1500. The debtors have not alleged specific facts sufficient to create an issue of fact for an evidentiary hearing or to sustain a finding of appellate standing. *See id.* In conclusory fashion, the debtors allege that if the trustee,

instead of settling, had successfully litigated the adversary proceedings against CVNB then the estate would have been large enough to generate a surplus for them. Even assuming the truth of this bare allegation, it does not demonstrate appellate standing. The debtors do not appeal the bankruptcy court's general finding and approval of the trustee's compromise with CVNB. They only challenge one term of that settlement—the subordination rather than the withdrawal of CVNB's unsecured claims. The debtors do not allege, let alone prove, that if the district court were to grant them the relief requested in their appeal then the estate would become solvent or create a surplus. *See Willemain*, 764 F.2d at 1023. The limited record suggests just the opposite. In his response to the debtors' motion to reconsider, the trustee asserted that the motion raised "essentially a moot issue, since the trustee expects the administrative claims to exceed the funds on hand, after those claims are approved and allowed." (Dk. 41, Ex. 1). The court finds that the debtors have not demonstrated a pecuniary interest that was adversely affected by the challenged ruling. Consequently, the debtors lack standing to appeal.

**MERITS**

While the court could rest on its finding that the debtors lack standing to appeal, it will proceed to an alternate holding on the merits in order to assure the debtors that the bankruptcy court did not error in entering either order challenged on appeal. Assuming, therefore, that the debtors had shown their standing to appeal, the district court will consider briefly the merits to their appeal.

The debtors first argue the bankruptcy court erred in denying their motion to reconsider for lack of standing. The district court believes the debtors misapprehend the bankruptcy court's ruling. The bankruptcy court did not say in the order of July 1, 1994, that the debtors were not entitled to notice of the compromise proceeding, to appear in the hearing, to file their objection, or even to file a motion to reconsider.[1] Instead, the bankruptcy court said the debtors were not parties to the settlement agreement and, consequently, were not in a legal position whereby they could ask the court to interpret and enforce the agreement in any other way than what was intended by the CVNB and the trustee, the parties to that agreement. The logic behind that statement is irrefutable. A settlement agreement is a contract. " 'A cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistent with legal principles.' " *Garvey Center, Inc. v. Food Specialties, Inc.*, 214 Kan. 224, 229, 519 P.2d 646 (1974) (quoting *Hamann v. Crouch*, 211 Kan. 852, 508 P.2d 968 (1973)). In short, the bankruptcy court held that it was interpreting the settlement agreement consistent with CVNB's and the trustee's expressed intentions and that the debtors lacked any legal authority for seeking a different interpretation. The district court can find no error in this legal conclusion.

The debtors next argue the bankruptcy court erred in signing an order that approved a compromise which differed from the one represented in the trustee's application and in the settlement agreement. The debtors' argument is not well-founded. While the trustee's application may submit to the debtors' argued interpretation, the settlement agreement and the hearing transcript fully support the interpretation embodied in the court's approval order on February 9, 1994. Prior to approving the settlement agreement, the bankruptcy judge explained at the hearing his understanding of what the parties intended regarding CVNB's subordination of its unsecured claims as opposed to the withdrawal of all unsecured claims to the estate after distribution. The bankruptcy judge's interpretation drew the confirmation of CVNB's counsel and the concession of the debtors' counsel. There was no dispute at the hearing that the bankruptcy judge had correctly interpreted this aspect of the settle-

---

1. There is a difference between standing to interpose an objection to a timely settlement and standing to appeal a bankruptcy court's approval of the settlement over the interposed objection. *See In re Thompson*, 965 F.2d 1136, 1140–46 (1st Cir.1992).

ment agreement. For these reasons, the court can find no error in the bankruptcy judge's construction of the settlement agreement and order approving the same.

IT IS THEREFORE ORDERED that the debtors lack standing to bring this appeal and, alternatively, that the bankruptcy court's orders filed February 9, 1994, and July 1, 1994, are affirmed.