**UNITED STATES COURT OF APPEALS**

**FIFTH CIRCUIT**

_____

No. 96-11201

(Summary Calendar)

_____

In The Matter Of: ALPHONSO SOLOMON,

Debtor.

ALPHONSO SOLOMON, JANET M SOLOMON

Appellants,

versus

ROBERT MILBANK, Trustee, ET AL.,

Appellees.

_____

No. 96-11528

(Summary Calendar)

_____

In the Matter of: ALPHONSO SOLOMON,

Debtor.

ALPHONSO SOLOMON, JANET M SOLOMON,

Appellants,

versus

ROBERT MILBANK, Trustee,

Appellee.

_____

No. 96-11529

(Summary Calendar)

_____

In the Matter of: ALPHONSO SOLOMON,

Debtor.

ALPHONSO SOLOMON,

Appellant,

versus

GRAHAM BARBER COLLEGE, INC.,

Appellee.

Appeals from the United States District Court
For the Northern District of Texas

September 25, 1997

Before DAVIS, EMILIO M. GARZA, and STEWART, Circuit Judges.

PER CURIAM:[*]

The debtor, Alphonso Solomon, appeals the district court's affirmance of three orders issued by the bankruptcy court (1) entering a nondischargeable judgment against Solomon and his estate, (2) confirming Solomon's plan of reorganization as modified by a settlement agreement negotiated by the trustee, Robert Milbank, and (3) converting his case from chapter 11 to chapter 7. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I

In May 1994, Solomon filed a voluntary petition for bankruptcy relief under chapter 11 of the Bankruptcy Code. The bankruptcy court subsequently converted Solomon's case to chapter 7 and appointed Milbank as trustee of the estate. Solomon converted the case back to chapter 11, and Milbank remained as chapter 11 trustee.

At the time he filed his bankruptcy petition, Solomon was involved in litigation in Texas state court with LaFrance Graham, as executrix of the Estate of Johnny Graham, Sr., and Graham Barber College (collectively, "the College") concerning Solomon's alleged breaches of fiduciary duty during his tenure as president of the College. The state court action was removed to bankruptcy court and, after trial, the bankruptcy court entered a judgment against Solomon in the amount of $224,724 plus pre-judgment interest. The court further ordered the judgment nondischargeable under sections 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code[1] and entered an order allowing the judgment against Solomon's estate.

---

[1] Section 523(a) of the Bankruptcy Code excludes certain debts from discharge in bankruptcy. The relevant portions of the section provide that:
(a) discharge [under this title] does not discharge an individual debtor from any debt))
    (2) for money . . . to the extent obtained by . . . actual fraud . . .;
    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .
11 U.S.C. § 523(a).

Solomon appealed the damage award and nondischargeability judgment to the district court, but did not appeal the court's order allowing the claim against the estate.

Solomon filed a proposed plan of reorganization ("the Plan") which the bankruptcy court confirmed on December 15, 1995. The Plan provided for the creation of a trust for the liquidation of all assets of the estate until such time as the creditors were paid in full. The Plan further provided that Milbank would continue as liquidating trustee after confirmation. As part of the Plan, Solomon agreed to pay $50,000 in post-confirmation income to the liquidating trust on or before January 31, 1996.

Prior to confirmation of the Plan, Milbank negotiated a

compromise and settlement of the College's claim against the estate (the "Compromise") which provided that, in exchange for the transfer of all right, title, and interest held by the bankruptcy estate in the stock and assets of the College, the College would release the nondischargeable judgment, waive all claims against Solomon and his bankruptcy estate, including a $103,000 proof of claim filed by LaFrance Graham, and dismiss all pending proceedings with prejudice. In addition, Graham agreed to pay $80,000 cash to the estate in settlement of a separate judgment held by the estate against Graham (the "Payne judgment") which had an approximate face value of $110,000 including interest. The bankruptcy court approved the Compromise, finding it "fair, equitable, and in the best interests of the [estate] and its creditors" and "eliminates the largest known or allowed claim . . . and locks in a discharge for the Debtor." The bankruptcy court then approved the Plan as modified by the Compromise. Solomon appealed the bankruptcy court's order approving the Compromise and the order confirming the Plan insofar as it conditioned confirmation on the Compromise. The district court consolidated the two appeals.

While Solomon's appeal of the confirmation order was pending

5

before the district court, Milbank and the College implemented the Compromise. The College paid $80,000 to the trust and the trust transferred the stock to the College. In addition, the bankruptcy court entered orders releasing the nondischargeable judgment against the estate and Solomon and authorizing withdrawal of all claims against the estate.

After confirmation of the Plan, Solomon failed to contribute the required $50,000 in post-confirmation income by January 31, 1996, as required by the Plan. In accordance with Article 11.2 of the Plan, Milbank filed a motion to show cause why the case should not be converted to chapter 7 under section 1112(b) of the Bankruptcy Code.[2] Following a hearing, the bankruptcy court found that Solomon had not fulfilled his obligation to make the payment, that failure to make the payment constituted a material default under the Plan, and that conversion of the case for continued liquidation under chapter 7, rather than dismissal, would be in the best interests of the creditors. Accordingly, the bankruptcy court converted the case to chapter 7. Solomon appealed the conversion order.

---

[2] Section 1112(b) provides:
(b) Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including))
. . .
(8) material default by the debtor with respect to a confirmed plan
. . .
11 U.S.C. § 1112.

6

Soon after the bankruptcy court converted the case, the district court dismissed Solomon's appeal of the bankruptcy court's order confirming the Plan, reasoning that since the case had been converted to chapter 7, the appeal of confirmation of a chapter 11 plan of reorganization is moot. Several months later, the district court affirmed the bankruptcy court's order converting the case to chapter 7 and dismissed Solomon's appeal of the nondischargeability judgment. Solomon appeals each of these three orders by the district court.

## II

We will first address Solomon's appeal of the district court's affirmance of the bankruptcy court's order converting his case from chapter 11 to chapter 7. A determination of whether cause under section 1112(b) exists rests in the sound discretion of the bankruptcy court. *Sullivan Central Plaza I, Ltd. v. Bancboston Real Estate Capital Corp. (Matter of Sullivan Cent. Plaza I, Ltd.)*, 935 F.2d 723, 728 (5th Cir. 1991). We review a bankruptcy court's findings of fact for clear error and its determination of issues of law *de novo*. *Border v. McDaniel (Matter of McDaniel)*, 70 F.3d 841, 842-43 (5th Cir. 1995).

## A

Solomon first argues that the district court erred in affirming the bankruptcy court's determination that his failure to pay $50,000 in post-confirmation income to the Trust constituted a

material default under the Plan. Alphonso insists that Janet Solomon made this payment on his behalf when she contributed her 50 percent interest in the proceeds from the sale of community property to the Trust.

Janet held a 50 percent interest in all community property assets immediately prior to commencement of the bankruptcy proceeding. After Alphonso filed his petition, Janet, as non-debtor spouse, became a creditor of the estate based on her interest in that property. Several months prior to confirmation of the Plan, Janet filed a motion to order Milbank to release her share of the proceeds from the sale of community property assets pursuant to 11 U.S.C. § 363(j).[3] Before the bankruptcy court ruled on the motion, however, Alphonso filed a proposed modification of the Plan by which Janet would reserve the right to contribute to the estate, as an additional source of funding, her share of those assets up to the amount of $138,000. The Solomons argue that the bankruptcy court granted this modification and accepted Janet's contribution of $138,000, including $50,000 in satisfaction of Alphonso's obligation under the Plan.

Solomon mischaracterizes the bankruptcy court's bench ruling. As the district court correctly noted, the bankruptcy judge did not

---

[3] Section 363(j) states: "After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale . . . according to the interests of such spouse or co-owner, and of the estate."

rule on Janet's motion for distribution of her community property interest but rather carried the motion until such time as $276,000 in community property assets had been distributed.[4] At any rate, Janet Solomon is not entitled to collect any part of her one-half interest in community property assets until the estate is completely administered. *See In re Melenyzer*, 140 B.R. 143, 148 n.16 (Bankr. W.D. Tex. 1992) (finding that "the mere fact that certain property belongs to the community estate does not make the non-debtor spouse immediately entitled to receive and spend her one-half interest"). Section 541(a)(2) of the Bankruptcy Code includes as property of the estate "[a]ll interests of the debtor and the debtor's spouse in community property" that is "(A) under the sole, equal, or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor . . . ." 11 U.S.C. § 541(a)(2). The bankruptcy court specifically found that Alphonso Solomon had either sole or joint control and management of all of the community property in question. In addition, under Texas law, community property subject to sole or joint control of a spouse is subject to the liabilities of that spouse. Tex. Fam. Code Ann. § 3.202(c) (West 1997) (formerly Tex. Fam. Code Ann. § 5.61(c)). Therefore, under section 541(a)(2), Janet Solomon's

---

[4]    The bankruptcy court reasoned that at that time, Janet's motion may be moot since the $276,000 distributed to creditors would include Janet's proposed contribution of $138,000 in additional funding for the estate. In doing so, however, the court specifically declined to rule on the question of whether Janet was actually entitled to distribution of $138,000 so as to enable her to make the proposed contribution.

9

share of community property assets became property of the estate upon commencement of the case, subject to administration by the trustee and payment to creditors.

Janet, however, asserts that she has an immediate right to the proceeds of the sale of her community property interest under 11 U.S.C. § 363(j). Section 363(j), however, provides for payment of the non-debtor spouse's interest in property sold by the trustee only if the property is also subject to section 363(g) or (h). It is clear that subsection (g), which governs "dower or curtesy," does not apply in this case. Moreover, by its terms, section 363(h) applies only to property owned jointly by the estate and a third party, not to property wholly-owned by the estate.[5] Through the operation of section 541(a), the estate acquired both Alphonso's and Janet's interests in the community property and is therefore the sole owner. Section 363(h) is simply inapplicable.[6] *See In re Hendrick*, 45 B.R. 976, 987-88 (Bankr. M.D. La. 1985) (holding that § 363(h) does not apply to community property); *In re Verges*, 1992 WL 77791 *6 (E.D.La. 1992) (finding that § 363(j) does not apply to distribution of proceeds of sale of former community

---

[5]     Section 363(h) allows the trustee, under certain circumstances, to "sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety."

[6]     Our conclusion is further bolstered by the language of section 363(i) which specifically distinguishes between jointly-owned property to which subsection (h) applies and property of the estate that was community property immediately prior to commencement of the case.

property held by estate). Therefore, Janet was not entitled to distribution of the proceeds of the sale of community property under section 363(j).

In sum, since Janet Solomon's share of community property was already property of the estate, her "contribution" of that interest could not constitute satisfaction of Alphonso's obligation to contribute $50,000 in post-confirmation income to the estate. It is undisputed that Solomon did not otherwise make the required payment under the Plan. Therefore, the bankruptcy court did not err in finding that Solomon had materially breached the Plan.

B

Solomon presents a litany of other arguments in support of his appeal of the conversion order, only two of which merit discussion. First, Solomon argues that the bankruptcy court failed to evaluate whether converting the case to chapter 7, as opposed to maintaining the case in chapter 11, best served the interests of the creditors. However, the test under section 1112(b) is not whether continued administration of the reorganization plan or conversion is better for creditors, but whether conversion or dismissal of the case best serves their interests. 11 U.S.C. § 1112(b) ("[T]he court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ."). Solomon does not argue how dismissal of the entire case as opposed to continued liquidation of trust assets in chapter 7 would better

11

serve the creditors.[7]  The bankruptcy court has broad discretion to convert a case to chapter 7 upon a showing of cause and need not give exhaustive reasons for its determination.  *Koerner v. Colonial Bank (Matter of Koerner)*, 800 F.2d 1358, 1367-68 (5th Cir. 1986).  We find no abuse of discretion.

Second, Solomon argues that only a creditor may request conversion under 11 U.S.C. § 1112(b); therefore, Milbank did not have standing to file a motion to show cause in the bankruptcy court.   Section 1112(b), however, provides that the court may convert a case "on request of a party in interest."   11 U.S.C. § 1112(b).  Section 1109(b) explicitly includes the trustee as "a party in interest" with the right to raise any issue in a case under chapter 11.  Milbank clearly was a proper party to move for conversion of the case.

We find all other arguments raised by Solomon to be meritless.  The district court did not err in converting Solomon's case from chapter 11 to chapter 7.

---

[7]  Solomon simply cites *In re T.S.P. Industries, Inc.*, 117 B.R. 375, 377-78 (Bankr. N.D. Ill. 1990), for the proposition that, because all property of the estate vests in the debtor upon confirmation of the plan of reorganization under section 1141(b) and does not subsequently revest in the estate upon conversion under section 1112(b), conversion to chapter 7 after confirmation would result in an estate with no assets.  *See also In re Winom Tool and Die, Inc.*, 173 B.R. 613, 620-21 (Bankr. E.D. Mich. 1994).  Therefore, he concludes that conversion cannot possibly be in the best interests of the creditors because the estate could not thereafter make distributions to creditors.

Solomon misses the mark.  Section 1141(b) vests property of the estate in the debtor upon confirmation "*except as otherwise provided in the plan.*" 11 U.S.C. 1141(b) (emphasis added).  Here, Article VII of the Plan explicitly provided that all property of the estate, except exempt property or property subject to allowed secured claims, vested in the liquidating trust upon confirmation, not Solomon.  Therefore, *In re T.S.P. Industries* is clearly distinguishable.

12

III

We next consider Solomon's appeal of the district court's affirmance of the bankruptcy court's judgment of nondischargeability[8] and its order confirming the Plan. The district court dismissed both appeals as moot. We agree that Solomon's appeal of the confirmation of the Plan is moot since the Plan is no longer in effect in this chapter 7 proceeding. Solomon's appeal of the nondischargeability action is moot because, pursuant to the terms of the Compromise, the College has completely released both the estate and Solomon individually from the nondischargeable judgment. Thus, there is no judgment left to appeal.

Solomon, however, urges that the bankruptcy court erred in approving the Compromise because it grossly undervalued the stock of the College and allowed the settlement of the Payne judgment for less than its face value. Solomon also asserts that approval of the Compromise unfairly extinguished his right to appeal the judgment of liability. Solomon asks that we completely undo the Compromise and reinstate the $224,000 nondischargeable judgment against him.[9]

---

[8] The district court consolidated the appeal of the bankruptcy court's judgment of liability in the underlying suit and the judgment of nondischargeability of the claim under 11 U.S.C. § 523(a).

[9] It is questionable that we may afford Solomon the relief he seeks after consummation of the Compromise. The estate's suit against LaFrance Graham and the estate of Johnny Graham, Jr. for collection of the Payne judgment has been dismissed with prejudice by the Probate Court of Dallas County, Texas, and this court is powerless to resurrect that cause of action. *See Thibaut v. Ourso*,

13

We strongly question the wisdom of such a request. Solomon admits that he filed his voluntary petition for bankruptcy in anticipation of the judgment against him; the Compromise between Milbank and the College afforded Solomon the very discharge he desired. If we were to undo the Compromise to allow Solomon to appeal the liability judgment against him and he is then unsuccessful in that appeal, he cannot later obtain a discharge of the debt. 11 U.S.C. § 523(a).

At any rate, we find that Solomon has failed to demonstrate that the bankruptcy court erred in approving the Compromise. We review a bankruptcy court's approval of a compromise settlement under Bankruptcy Rule 9019(a) for abuse of discretion. *Connecticut General Life Ins. Co. v. United Companies Financial Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1995). We review

---

705 F.2d 118, 120-121 (5th Cir. 1983) (finding that appeal of settlement was moot where parties had dismissed state causes of action in reliance on court's order approving the settlement). Moreover, even if some form of relief could conceivably be fashioned, Solomon's challenge to the Compromise may still be barred under the doctrine of "equitable mootness" if implementation of that relief would be inequitable. *See Manges v. Seattle First National Bank (Matter of Manges)*, 29 F.3d 1034, 1038-39 (5th Cir. 1994), *cert. denied*, 513 U.S. 1152, 115 S. Ct. 1105, 130 L. Ed. 2d 1071 (1995); *Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. Official Comm. of Unsecured Creditors of LTV Steel Co. (In re Chateaugay Corp.)*, 988 F.2d 322, 325 (2d Cir. 1993). The concept of mootness from a "prudential standpoint protects the interests of non-adverse third parties who are not before the reviewing court but who have acted in reliance upon the plan as implemented." *Manges*, 29 F.3d at 1039. Although it is clear from the record that both Milbank and the College acted in reliance on the bankruptcy court's approval of the Compromise and confirmation of the Plan, both of whom are parties to the present appeal, neither Milbank nor the College state precisely how third parties have relied upon approval of the Compromise or how their rights would be affected by the relief requested. Because we find that Solomon's challenge to the Compromise fails on the merits, we decline to rule whether that challenge is moot under *Manges*.

14

the court's findings of fact *de novo*, but will not disturb findings of fact absent clear error. *Id*.

A bankruptcy court may approve a compromise settlement only when it is fair and equitable and in the best interests of the estate. *Id*. In making this determination, the bankruptcy court must consider: (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. *Id.* The interests of the creditors, not the debtor, are paramount in determining the fairness of the settlement. *Id*.

The bankruptcy court properly applied the *Foster Mortgage* test in ruling on the motion to approve the Compromise. The Court found that all parties in interest other than the Solomons supported the Compromise. Moreover, the Court noted that the terms of the agreement permitted the estate to extinguish its largest claim while disposing of an asset of the estate))the stock of a closely-held corporation))that is not easily valued or readily salable in the marketplace. The court weighed Solomon's likelihood of success in his appeal with the expense and delay of continued litigation and determined that the settlement was in the best interests of the estate, as well as Solomon, since the Compromise would lock in a guaranteed discharge for him. In addition, the court held that the

agreement would allow for the estate to collect on the Payne judgment against the estate of Johnny Graham, Jr., immediately and cheaply, rather than pursuing payment of the judgment in probate court.

Solomon vehemently asserts that Milbank and the bankruptcy court undervalued the estate's interest in the stock of the College, and that the swap of the stock for release of the judgment was not a fair exchange. In addition, he asserts that Milbank and the bankruptcy court gave inadequate consideration to his probability of success on the merits of his appeal of the nondischargeable judgment and his equitable subordination claim against the College. Solomon contends, with little explanation, that he is almost assured of success in the litigation.

However, a trustee "realistically cannot be required to demonstrate to the satisfaction of every individual creditor and the debtor, or to any compelling degree of certitude, that the settlement benefit to the [estate] and the value of the settled claim comprise a matched set." *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136, 1145 (1st Cir. 1992). The trustee need only reach an informed judgment that it would be "prudent to eliminate the "inherent risks, delay and expense of prolonged litigation in an uncertain cause." *Id.* Solomon has not shown that Milbank failed to make such an informed judgment.

Moreover, Solomon has the burden of proving that the fact

16

findings made by the bankruptcy court in ruling on the approval of the Compromise are clearly erroneous.  However, Solomon failed to include a copy of the transcript of the hearing upon which the bankruptcy court's rulings are based.  Thus, it is unclear from the record what evidence the court considered in ruling on the motion. In the absence of a transcript, we must presume the bankruptcy court's findings of fact are correct and supported by the evidence; therefore, Solomon simply cannot meet his burden on appeal.  *See, e.g., Trujillo v. Grand Junction Reg'l Ctr.*, 928 F.2d 973, 976 (10th Cir. 1991) ("When a trial transcript is not designated as part of the record on appeal, an appellate court cannot review the district court's factual findings and must accept them as correct.").  We find that the bankruptcy court did not abuse its discretion in approving the Compromise.[10]

---

[10]    We note that a chapter 7 debtor does not ordinarily have standing to appeal the settlement of a claim against the estate.  *In re Williams*, 181 B.R. 532 (D.Kan. 1995); *Martin v. O'Connor (In re Martin)*, 201 B.R. 338, 343 (Bankr. N.D. NY 1996).  Upon commencement of the case, all of the debtor's property becomes property of the estate, 11 U.S.C. § 541(a), and the appointment of a trustee makes the trustee the representative of the estate.  11 U.S.C. § 323(a). To have standing to appeal a bankruptcy order, a debtor must show that he was directly or adversely affected pecuniarily by the order, or that the order diminished his property, increased his burdens, or impaired his rights.  *Cajun Elec. Power Coop., Inc. v. Central La. Elec. Co., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 69 F.3d 746, 748 (5th Cir. 1995), *opinion withdrawn in other part on reh'g*, 74 F.3d 599 (5th Cir. 1996, *cert. denied*, ___ U.S. ___, 117 S. Ct. 51, 136 L. Ed. 2d 15 (1996).
     As a general rule, the debtor in a liquidation proceeding is hopelessly insolvent, and thus has no pecuniary interest in the administration of the estate.  *In re Martin*, 201 B.R. at 344.  However, if the debtor can show that a successful appeal will generate assets in excess of liabilities, thus entitling him to a distribution of surplus under 11 U.S.C. § 726(a)(6), then the debtor is a "person aggrieved" with standing to appeal.  *In re Thompson*, 965 F.2d at 1144 n.12.  Solomon asserts that return of the stock of the College to the estate and his successful appeal of the nondischargeable judgment will generate a surplus for the estate.  Because we find that in any case, Solomon cannot show that the

As a result of the implementation of the Compromise, the judgment of nondischargeability against Solomon has been fully released.  Therefore, there is no judgment against him from which he may appeal.

IV

Solomon's motion to file his reply brief in Case No. 96-11201 out of time is GRANTED.  We AFFIRM the district court's affirmance of the bankruptcy court's order converting Solomon's case from chapter 11 to chapter 7, and we AFFIRM the district court's dismissal of Solomon's appeals of the confirmation order and the dischargeability judgment as moot.

---

bankruptcy court erred in approving the Compromise, we will assume that Solomon's assertion is correct and that he has standing to prosecute this appeal.